1  DECHERT LLP
   Jonathan D.J. Loeb (State Bar No. 211749)
2  3000 El Camino Real
   Five Palo Alto Square, Suite 650
3  Palo Alto, CA 94306-2112
   (650) 813-4995
4  jonathan.loeb@dechert.com

5
   Katherine A. Helm
6  *Pro Hac Vice* (to be submitted)
   Three Bryant Park
7  1095 Avenue of the Americas
   New York, New York 10036-6797
8  (212) 698-3559
   khelm@dechert.com
9
   Sharon K. Gagliardi
10 *Pro Hac Vice* (to be submitted)
   2929 Arch Street
11 Cira Centre
   Philadelphia, PA 19104
12 (215) 994-2278
   sharon.gagliardi@dechert.com
13
   *Attorneys for Applicants Eli Lilly and*
14 *Company; Eli Lilly Italia S.p.A; Eli Lilly*
   *Kinsale Limited; Eli Lilly Ges.m.b.H.; and*
15 *Eli Lilly Nederland B.V.*

16                  **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
17                    **SAN FRANCISCO DIVISION**

18

19 *In re Ex Parte Application of*                  Case No. _____

20 Eli Lilly and Company; Eli Lilly Italia S.p.A;
   Eli Lilly Kinsale Limited; Eli Lilly           ***EX PARTE* APPLICATION FOR AN ORDER**
21 Ges.m.b.H.; and Eli Lilly Nederland B.V.,       **PURSUANT TO 28 U.S.C. § 1782 GRANTING**
                                                   **LEAVE TO OBTAIN DISCOVERY FOR USE**
22                  Applicants,                    **IN FOREIGN PROCEEDINGS AND**
                                                   **SUPPORTING MEMORANDUM**
23 For an Order Pursuant to 28 U.S.C. § 1782
   Granting Leave to Obtain Discovery for Use
24 in Foreign Proceedings

25

26

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................... 1

II.    JURISDICTION ..................................................................................................... 5

III.   FACTUAL BACKGROUND ................................................................................ 5

       A.    Genentech's Unsuccessful Worldwide Litigation Campaign Against Lilly ........... 5

       B.    Novartis AG Argued the IL17A/F Portfolio Was Invalid And Now Asserts
             It Against its Competitor Lilly ........................................................................... 7

       C.    Lilly Rejects Genentech's Offers to Sell its IL17A/F Portfolio ............................. 9

       D.    Novartis Acquired and Asserted the IL17A/F Portfolio Unlawfully and for
             Anticompetitive Purposes ................................................................................. 10

       E.    This Court Granted Lilly's Previous Section 1782 Application Requesting
             Discovery for Use in the German Action ........................................................... 11

       F.    Novartis' Subsequent Assertion of EP '084 Against Lilly ................................... 12

             1.    The Irish Actions ................................................................................... 12

             2.    The Italian PI Application and the Subsequent Italian Action ................... 13

             3.    The Austrian PI Application .................................................................... 14

             4.    Lilly's Anticipated Complaints to the Enforcement Agencies ................. 14

       G.    Lilly Seeks Highly Relevant Information That Will Assist in Foreign
             Proceedings ...................................................................................................... 15

       H.    The Need for Section 1782 Discovery ................................................................ 16

IV.    LEGAL STANDARD .......................................................................................... 16

V.     ARGUMENT ...................................................................................................... 17

       A.    Lilly's Application Meets the Section 1782 Statutory Requirements ................... 17

       B.    The Discretionary *Intel* Factors Weigh in Favor of Granting Lilly's
             Application ....................................................................................................... 19

             1.    Genentech is Not a Party to the Pending Actions Before the
                   European Courts and the Contemplated Enforcement Agencies ............... 19

             2.    The Relevant Foreign Courts Are Receptive to U.S. Judicial
                   Assistance ............................................................................................. 20

3.    No Foreign Discovery Restrictions Bar Lilly's Requested
Discovery ................................................................................................. 22

4.    Lilly's Discovery is Narrowly Tailored and Not Unduly Intrusive or
Burdensome ............................................................................................. 22

VI.    CONCLUSION ...................................................................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

*In re Ex Parte Apple Inc.*,
4    No. MISC 12-80013 JW, 2012 WL 1570043 (N.D. Cal. May 2, 2012) .................... 17, 20, 23

5

*In re Apple Retail UK Ltd.*,
6    No. 20-MC-80109-VKD, 2020 WL 3833392 (N.D. Cal. July 8, 2020) ........................... 20, 22

7

*In re Ex Parte Application of Lilly Deutschland GmbH*,
    Case No. 4:30-mc-80164-KAW, Dkt. No. 1 (N.D. Cal. Sep. 22, 2020) ...................... 1, 11, 12

8

*In re Ex Parte Application of Lilly Deutschland GmbH*,
9    Case No. 4:30-mc-80164-KAW, Dkt. No. 8 (N.D. Cal. Nov. 12, 2020) .......................... 1, 11

10

*In re Ex Parte Application of Lilly Deutschland GmbH*,
    Case No. 4:30-mc-80164-KAW, Dkt. No. 11 (N.D. Cal. Jan. 12, 2021) ............................. 12

11

*In re Ex Parte Application of Qualcomm Inc.*,
12    162 F. Supp. 3d 1029 (N.D. Cal. 2016) ................................................................. 18

13

*In re Ex Parte Caterpillar Inc.*,
14    No. 3:19-mc-0031, 2020 U.S. Dist. LEXIS 70913 (M.D. Tenn. Apr. 21, 2020) ............. 18, 21

15

*In re Danieli & C. Officine Meccaniche S.p.A.*,
    No. 18-372, 2018 U.S. Dist. LEXIS 94936 (W.D. Pa. June 6, 2018) ................................ 21

16

*Eli Lilly & Co. v. Genentech, Inc.*,
17    PGR2019-00043, Paper 1 (PTAB Apr. 2, 2019) ......................................................... 7

18

*Eli Lilly & Co. v. Genentech, Inc.*,
19    PGR2019-00043, Paper 25 (PTAB May 26, 2020) .................................................... 7

20

*In re Eurasian Nat. Res. Corp. Ltd.*,
    No. 18-mc-80041-LB, 2018 WL 1557167 (N.D. Cal. Mar. 30, 2018) ............................... 22

21

*Genentech, Inc. v. Eli Lilly & Co.*,
22    No. 3:18-cv-01518-JLS-AHG (S.D. Cal.) ......................................................... 6, 7, 9

23

*In re Google Inc.*,
    No. 14-MC-80333-DMR, 2014 WL 7146994 (N.D. Cal. Dec. 15, 2014) ....................... 20, 22

24

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
25    633 F.3d 591 (7th Cir. 2011) ............................................................................ 19

26

*HT S.R.L. v. Velasco*,
27    No. MC 15-664 (RBW), 2015 WL 13759884 (D.D.C. Nov. 13, 2015) ............................. 21

28

*In re Illumina Cambridge Ltd.*,
    No. 19-MC-80215-WHO (TSH), 2019 WL 5811467 (N.D. Cal. Nov. 7, 2019) .................... 22

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
    No. 19-MC-80215-WHO(TSH), 2020 WL 820327 (N.D. Cal. Feb. 19, 2020) ..................... 19

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ............................................................................................................... *passim*

*IPCom GMBH & Co. KG v. Apple Inc.*,
    61 F. Supp. 3d 919 (N.D. Cal. 2014) .................................................................................... 23

*In re Ex Parte LG Elecs. Deutschland GmbH*,
    No. 12CV1197-LAB MDD, 2012 WL 1836283 (S.D. Cal. May 21, 2012) ......................... 23

*McKevitt v. Pallasch*,
    339 F.3d 530 (7th Cir. 2003) ................................................................................................. 21

*In re NRC Holding, Ltd.*,
    No. 14-MC-61962, 2015 WL 541770 (S.D. Fla. Feb. 10, 2015) ........................................... 21

*Qualcomm Inc. v. Apple Inc.*,
    No. 18-MC-80134-PJH, 2021 WL 879817 (N.D. Cal. Mar. 9, 2021) ................................... 21

*In re: Request for Jud. Assistance from the Dist. Ct. Landeck, Austria in the Matter*
    *of Thomas Erich Meinrad Praxmarer*,
    No. 3:20-MC-6-J-32PDB, 2020 WL 1673652 (M.D. Fla. Apr. 3, 2020) ....................... 18, 21

*In re Request for Subpoena by Ryanair Ltd.*,
    No. 5:14MC80270-BLF-PSG, 2014 WL 5583852 (N.D. Cal. Oct. 31, 2014) ................ 18, 21

*In re Roebers*,
    No. C12-80145 MISC RS LB, 2012 WL 2862122 (N.D. Cal. July 11, 2012) ...................... 21

*In re Roz Trading Ltd.*,
    469 F. Supp. 2d 1221 (N.D. Ga. 2006) ............................................................................ 18, 21

*In re Top Matrix Holdings Ltd.*,
    No. 18 MISC. 465 (ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ................................. 18

*UCB, Inc. v. Genentech, Inc.*,
    PGR2019-00044, Paper 23 (PTAB May 26, 2020) ................................................................ 9

*In re: Ex Parte Application Varian Med. Sys. Int'l AG*,
    No. 16-MC-80048-MEJ, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ....................... 19, 20

**Statutes**

28 U.S.C. § 1782 .............................................................................................................. *passim*

1

**Other Authorities**

2

Federal Rule of Civil Procedure 26 ................................................................................................ 22

3

Federal Rule of Civil Procedure 45 .................................................................................................. 1

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Eli Lilly and Company ("Lilly US"), along with its foreign subsidiaries, Eli Lilly Italia S.p.A ("Lilly Italia"), Eli Lilly Kinsale Limited ("Lilly Limited"), Eli Lilly Nederland B.V. ("Lilly B.V."), and Eli Lilly Ges.m.b.H. (Lilly m.b.H.) (collectively "Lilly") applies to the Court *ex parte* for a renewed order pursuant to 28 U.S.C. § 1782 ("Section 1782") granting Lilly leave to obtain targeted discovery from Genentech, Inc. ("Genentech") for use in foreign proceedings involving Novartis Pharma AG ("Novartis").

This Section 1782 application is related to a prior application, filed on September 22, 2020 (No. 4:20-mc-80164-KAW), and granted by this Court in its November 12, 2020 Order. Dkt. No. 8. Pursuant to that Order, Lilly obtained no discovery from Genentech and withdrew the application without prejudice following a settlement of the underlying foreign proceeding. Since then, however, Novartis has filed multiple new foreign proceedings against Lilly, as detailed herein. Thus, Lilly hereby re-files an amended Section 1782 application, supported by the memorandum of points and authorities provided below and the Declaration of Gilbert T. Voy, filed concurrently herewith. A Proposed Order and Rule 45 subpoenas to be ordered and authorized to serve on Genentech accompany this application as Exhibits A and B-E, respectively.

## I.    <u>INTRODUCTION</u>

Lilly seeks limited and targeted document and deposition discovery from Genentech, headquartered in South San Francisco, in support of Lilly's pending and potential claims and defenses to foreign proceedings adverse to Novartis, related to a patent family that was, until recently, owned by Genentech. Novartis went from opposing European Patent No. 2 784 084 (the "EP '084 patent") before the European Patent Office to acquiring this patent from Genentech and asserting it in a European litigation campaign in which Novartis has repeatedly alleged infringement by the sale of Lilly's antibody product Taltz® (*ixekizumab*), which treats plaque psoriasis, psoriatic arthritis, and pediatric plaque psoriasis.

Novartis launched its European litigation campaign against Lilly in June 2020, when Novartis asserted the EP '084 patent against Lilly US's German subsidiary, Lilly Deutschland GmbH ("Lilly GmbH"), in the Regional Court in Mannheim, Germany (the "German Action"),

1    seeking an injunction.  Lilly GmbH turned to this Court for assistance under Section 1782, and it

2    granted Lilly permission to serve discovery on Genentech.  However, before any discovery was

3    produced, the German Action settled, and Lilly GmbH withdrew its Section 1782 application.

4           Now, seeking, in part, to undermine the settlement with Lilly in the German Action as

5    well as to eliminate Lilly as a competitor globally, Novartis has alleged infringement of the same

6    EP '084 patent against various Lilly entities in the High Court of Ireland, filed for preliminary

7    injunctions in the Court of Rome, Italy ("Italian PI Application") and in the Commercial Court of

8    Vienna, Austria ("Austrian PI Application" or "Austrian Action").  Lilly responded by asserting

9    defenses including lack of prima facie patent validity and infringement, lack of irreparable harm

10   and competition law violations to Novartis' Italian PI Application—which led to its denial by the

11   Court of Rome on June 1, 2021.  At the same time, Lilly also filed a revocation and non-

12   infringement action in the Court of Milan, Italy, seeking revocation of the EP '084 patent and a

13   judgment of non-infringement ("Italian Action").  Lilly intends to further respond, in part, by

14   filing complaints with one or more competition enforcement agencies overseeing and enforcing

15   competition laws, including potentially the European Commission and the Italian Antitrust

16   Authority ("IAA") (collectively "Enforcement Agencies"), to resist Novartis' clearly

17   anticompetitive acts.  Thus, Lilly requests the assistance of this Court once again to obtain

18   discovery under Section 1782.

19          The European patent at issue in the foreign proceedings, EP '084, is part of a portfolio

20   originally owned by Genentech, including, *inter alia*, the "parent" patent EP 1 641 822 ("EP '822

21   patent"), the divisional ("child") EP '084 and its various specific country counterparts, and the

22   U.S. counterpart, U.S. Pat. No. 10,011,654 (the "U.S. '654 patent") (hereinafter referred to

23   collectively as the "IL17A/F portfolio").  Novartis purportedly acquired the IL17A/F portfolio

24   from Genentech less than a week before Novartis filed the German Action.  Prior to that action,

25   Genentech had brought a series of its own lawsuits asserting patents in the IL17A/F portfolio

26   against Lilly US and related Lilly entities around the world, including in England, Germany, and

27   the United States.

28          Wherever invalidity was in issue, Genentech either lost on the merits and/or otherwise

withdrew its claims.  Genentech's behavior with respect to the U.S. litigation is illustrative and of particular interest to Lilly.  In July 2018, Genentech initiated patent infringement litigation in the United States, asserting the U.S. '654 patent against Lilly US in the U.S. District Court for the Southern District of California.  In response, Lilly US challenged the patent's validity at the Patent Trial and Appeals Board ("PTAB") of the U.S. Patent and Trademark Office ("USPTO").  Rather than substantively respond to Lilly US when a response was due in January 2020, Genentech instead offered, in December 2019, to sell its IL17A/F portfolio to Lilly US and presumably to Novartis as well.  Lilly US informed Genentech that it was not interested in purchasing a patent portfolio that was either not infringed or "hopelessly" invalid.  Shortly thereafter, Genentech dismissed the U.S. action with prejudice after its patent was canceled by the PTAB.  Lilly US was declared the prevailing party in the district court case and is currently seeking attorneys' fees on appeal.

Apparently, Novartis was interested in acquiring a hopelessly invalid patent portfolio, as Lilly learned that Genentech had purportedly assigned the remnants of the IL17A/F portfolio to Novartis in correspondence from Novartis' UK counsel, shortly before learning that Novartis had filed the German Action.  While Genentech does not market a competing product to Lilly's Taltz®, Taltz®'s main competitor is Novartis' antibody product Cosentyx® (*secukinumab*).  Lilly believes that Novartis acquired rights to Genentech's IL17A/F portfolio—which may have taken the form of a sale with an ongoing revenue stream to Genentech—to preserve Novartis' own currently dominant market position, as a first mover, and to foreclose competition from Taltz®, which has successfully challenged Novartis' Cosentyx® in the marketplace, gaining ground against it over the past five years.

The claims for injunctive relief before the High Court of Ireland and in the Italian PI Application seek to further this goal and are designed to drive Lilly's Taltz® out of the global marketplace.  The discovery Lilly seeks pertains to Novartis' unlawful attempt to corner global sales for this class of treatments and Genentech's involvement and acts relating thereto.  Genentech likely has possession of the information Lilly seeks, or can obtain it from Novartis, because of the (potentially ongoing) relationship between Genentech and Novartis relating to the

1   IL17A/F portfolio transfer.

2          Novartis appears to have acquired the IL17A/F portfolio not for its own freedom to

3   operate, *i.e.,* to market and sell its own products, but for entirely anti-competitive purposes.

4   When Genentech divested the portfolio to Novartis, not only had the portfolio's U.S. asset already

5   been canceled by the PTAB, but the European EP '822 patent had finally been revoked with

6   effect across Europe, and its U.K. counterpart had been revoked in national invalidity

7   proceedings.  What is more, Novartis' parent company, Novartis AG ("Novartis AG"), had taken

8   part in the successful challenge to the validity of the EP '822 patent before the European Patent

9   Office ("EPO").  Novartis AG was also participating in the challenge to the child EP '084 patent

10  in the EPO and maintained its position as an opponent even after Novartis filed suit to enforce

11  this same patent against Lilly in the German Action.  And now, as part of its anticompetitive

12  scheme, Novartis is attempting to undermine the settlement of the German Action by filing

13  infringement claims in Ireland.

14         Accordingly, Lilly seeks from Genentech narrowly-tailored discovery in support of its

15  claims and defenses—competition and otherwise—that Lilly intends to assert against Novartis in

16  the foreign proceedings relating to: (1) Genentech's failed attempts to sell the IL17A/F portfolio

17  to Lilly and other companies; (2) Genentech's evaluation of the IL17A/F portfolio; and

18  (3) Genentech's negotiations with Novartis concerning the IL17A/F portfolio, the subsequent

19  divestiture and ultimate purported assignment of the IL17A/F portfolio to Novartis, and any

20  ongoing agreements between Genentech and Novartis concerning the IL17A/F portfolio or

21  Cosentyx® (*secukinumab*).

22         Lilly's application satisfies Section 1782's three statutory requirements for this Court to

23  order production of this discovery from Genentech.  First, discovery is sought from an entity that

24  "resides" in this District, as Genentech is headquartered in South San Francisco.  Second, Lilly

25  seeks discovery "for use" before a "foreign tribunal," specifically the High Court in Ireland, the

26  Court of Rome (should Novartis appeal), the Court of Milan, and the Court of Vienna

27  (collectively "European Courts"), as well as the Enforcement Agencies.  Third, Lilly qualifies as

28  an "interested person" in the foreign proceedings as a named party to those proceedings.

1       Moreover, the U.S. Supreme Court's discretionary *Intel* factors also weigh in favor of

2   granting Lilly's request. *See Intel*, 542 U.S. at 264-65. First, Genentech is not a current

3   participant in the pending and contemplated actions and is outside those foreign tribunals'

4   jurisdictional reach—rendering the discovery Lilly seeks unobtainable without Section 1782.

5   Second, the European Courts and Enforcement Agencies are receptive to the type of discovery

6   sought herein by Lilly, and the request is not made to circumvent any limitation imposed by those

7   tribunals. Finally, Lilly's request is narrowly tailored, not unduly intrusive or burdensome, and is

8   intended for use in support of Lilly's claims and defenses in the European Courts and the

9   Enforcement Agencies. Accordingly, Lilly respectfully requests that the Court enter the order

10  attached as Exhibit A, allowing Lilly to serve the subpoenas attached as Exhibit B-E.

11  ## II.   JURISDICTION

12      This Court has jurisdiction to hear this application pursuant to 28 U.S.C. § 1782, which

13  provides "[t]he district court of the district in which a person resides or is found may order him to

14  give his testimony or statement or to produce a document or thing for use in proceeding in a

15  foreign or international tribunal . . . ." Genentech has its principal place of business within the

16  U.S. District for the Northern District of California at 1 DNA Way, South San Francisco, CA.

17  ## III.   FACTUAL BACKGROUND

18  ### A.   Genentech's Unsuccessful Worldwide Litigation Campaign Against Lilly

19      Lilly is an Indianapolis-based global pharmaceutical company that, together with its

20  worldwide network of affiliates, produces and markets Taltz® (containing the antibody

21  *ixekizumab*), an advanced treatment for plaque psoriasis, psoriatic arthritis, and pediatric plaque

22  psoriasis. Declaration of Gilbert T. Voy ("Decl.") ¶ 4. Taltz® is an injectable form of a

23  humanized monoclonal antibody that acts by binding to and neutralizing the protein interleukin-

24  17A (IL17A), reducing inflammation. *Id*. The Lilly family of companies had been the target of

25  numerous patent infringement claims worldwide relating to Taltz® by Genentech asserting the

26  IL17A/F portfolio. *Id*. ¶ 6. Genentech pursued those claims worldwide, including here in the

27  United States, as well as in the United Kingdom, France, and Germany. *Id*.

28      The IL17A/F portfolio, which includes EP '822, was originally owned by Genentech. *Id*.,

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

LILLY'S *EX PARTE* APPLICATION
PURSUANT TO 28 U.S.C. §1782

¶ 7.  In July 2017, Lilly brought proceedings in the U.K. seeking the revocation of the U.K. counterpart of EP '822 patent and Genentech counterclaimed for infringement against Lilly.  *Id.* Genentech has since asserted the IL17A/F portfolio against various Lilly entities in various jurisdictions, as part of a worldwide patent litigation campaign.  *Id.*  In July 2018, Genentech brought a U.S. infringement action, filed the day the U.S. '654 patent issued, in the U.S. District Court for the Southern District of California.  *Genentech, Inc. v. Eli Lilly & Co.*, No. 3:18-cv-01518-JLS-AHG (S.D. Cal.) (the "S.D. Cal. Litigation").  Then in August 2019, Genentech commenced German infringement proceedings against various Lilly entities asserting the EP '822 patent and its child EP '084 patent based on sales of Taltz®.  Decl. ¶ 8.  Genentech did not bring infringement proceedings in Germany or elsewhere against Novartis, the largest single shareholder in Genentech's parent company (Roche), for the sale of Cosentyx®.  *Id.*  Genentech also asserted the child EP '084 patent in an infringement counterclaim in the UK against various Lilly entities in response to revocation proceedings brought by Lilly in August 2019.  *Id.*, ¶ 9.  In December 2019, Genentech counterclaimed for infringement of the French counterpart of the EP '822 patent in on-going invalidity proceedings against Eli Lilly Nederland BV and Lilly France SAS.  *Id.*, ¶ 10.

The European litigations ended unsuccessfully for Genentech.  In each case, Genentech lost on the merits and/or otherwise withdrew its claims.[1]  *Id.*, ¶ 11.  All claims of the U.K. counterpart of EP '822 were held invalid by the Patents Court of England and Wales, in March 2019 following a defensive revocation action brought by Lilly, and EP '822 was revoked across Europe by the EPO in January 2020.  *Id.*  All of the granted claims of the U.K. counterpart of the child EP '084 patent were thereafter held invalid by the Patents Court of England and Wales.  *Id.* Also in January 2020, Genentech withdrew its German infringement action asserting the EP '822 patent, and in June 2020, Genentech withdrew its infringement action asserting the child EP '084

---

[1] The European litigations include lawsuits involving Lilly, Lilly GmbH, Eli Lilly Nederland B.V., Eli Lilly Kinsale Ltd., Lilly France SAS and Eli Lilly Italia S.p.A. before the Düsseldorf Regional Court in Germany (Dkt. Nos. 4a O 68/19 and 4a O 125/19); the Patents Court in the United Kingdom (claim numbers HP-2017-000041 and HP-2019-000035); and the District Court of Paris, 3rd Chamber, 1st Section R.G. No. 18/07580 in France.

patent, both of which had been pending at the Düsseldorf Regional Court.  *Id.*, ¶ 12.

The S.D. Cal. Litigation was short-lived and similarly unsuccessful for Genentech.  In April 2019, Lilly petitioned the PTAB to institute a Post-Grant Review ("PGR") of the U.S. '654 patent, which was instituted in October 2019, holding that at least one of the challenged claims was more likely than not invalid.  *See Eli Lilly & Co. v. Genentech, Inc.*, PGR2019-00043, Paper 1 (PTAB Apr. 2, 2019); *id.*, Paper 11 (PTAB Oct. 7, 2019).  The parties then agreed to stay the S.D. Cal. Litigation in November 2019.  *See* S.D. Cal. Litig. Dkt. No. 72.  Genentech ultimately abandoned its opposition to the PGR and further voluntarily moved to dismiss the S.D. Cal. Litigation with prejudice in February 2020.  *See* S.D. Cal. Litig., Dkt. No. 73; *see also id.* Dkt. No. 77 (Mar. 16, 2020 Order of dismissal).  As a result, the U.S. '654 patent—the sole U.S. patent in the IL17A/F portfolio—was canceled three months later, on May 17, 2021, when the PTAB terminated the PGR and issued a Post-Grant Review Certificate canceling all claims.  *See Eli Lilly & Co. v. Genentech, Inc.*, PGR2019-00043, Paper 25 (PTAB May 26, 2020); Ex. 1.[2]

**B.    Novartis AG Argued the IL17A/F Portfolio Was Invalid And Now Asserts It Against its Competitor Lilly**

The IL17A/F portfolio includes two patents that Novartis AG had previously argued were invalid before the EPO, namely the parent patent EP '822 and the child EP '084 patent, the latter of which Novartis has now sought to enforce against Lilly in Germany, Italy, Ireland, and Austria. Decl. ¶¶ 13, 14.

Shortly after the EP '822 patent issued to Genentech, in early 2014, Novartis AG was the first opponent of EPO opposition proceedings directed to the parent EP '822 patent, arguing that it was invalid on numerous grounds.  *Id.*, ¶ 15.  Novartis AG was a vigorous opponent in the proceedings against Genentech and submitted (a) extensive invalidity arguments in briefing; (b) the results of extensive experimental tests it had conducted, accompanied by numerous declarations; and (c) appeared and argued at the oral hearing in October 2016.  *Id.*, ¶ 16.  Indeed, the EP '822 patent was revoked by the EPO at the oral hearing in October 2016, and its invalidity was affirmed before the Technical Board of Appeal of the EPO in January 2020.  *Id.*, ¶ 18.

---

[2] Exhibit 1 is attached to the Declaration of Jonathan D.J. Loeb.

1    Novartis AG remained fully engaged throughout the appeal stage, attending and making oral

2    arguments regarding the invalidity of the EP '822 patent at the January 2020 proceedings.  *Id.*

3         Separately, in July 2019, the day the child EP '084 patent issued, Novartis AG

4    commenced opposition proceedings challenging that patent, and filed a notice of opposition with

5    numerous invalidity grounds, which Novartis AG previously asserted successfully as an opponent

6    against the parent EP '822 patent.  *Id.*, ¶ 19.  During the pendency of this opposition, Genentech

7    allegedly assigned its IL17A/F portfolio to Novartis Pharma AG.  *See e.g. id.*, ¶ 20.  After

8    acquiring the EP '084 patent, Novartis, of course, has changed its tune.  It has asserted this same

9    patent in the German, Italian, Irish, and Austrian Actions against Lilly in a blatant attempt to

10   restrict competition with intellectual property that Novartis AG had for years argued was invalid.

11   *See e.g. id.*, ¶¶ 14, 34.

12        Incredibly, Novartis AG did not even withdraw its opposition to the child EP '084 patent

13   before it asserted that same patent in the German Action, seeking, *inter alia*, an injunction to

14   prevent the marketing and sales of Lilly's Taltz®.  *Id.*, ¶ 21.  It was, therefore, seeking to

15   invalidate and enforce this patent at the very same time.  Although Lilly and Novartis eventually

16   settled the German Action on January 1, 2021, it was only after Lilly asserted various competition

17   defenses highlighting the impropriety of Novartis' behavior.  *Id.*, ¶ 32, 33.

18        Novartis' coordinated European litigation campaign against Lilly did not end with the

19   settlement of the German Action, as Novartis now alleges infringement of the EP '084 patent in

20   Ireland, Italy, and Austria, again, seeking to remove Taltz® from the global marketplace.  *See e.g.*

21   *id.*, ¶¶ 14, 34.  Lilly submits that Novartis' conduct frustrates the purpose of the German

22   settlement and constitutes unlawful and anticompetitive behavior.

23        The discovery that Lilly seeks will reveal whether Novartis' representations during

24   negotiations with Genentech were consistent with the invalidity arguments that Novartis AG

25   made both in its earlier opposition to the EP '822 patent and its contemporaneous opposition to

26   the child EP '084 patent.  This discovery is relevant to Lilly's claims and defenses to Novartis'

27   anticompetitive scheme to acquire and enforce these patents, potentially jointly or in some

28   ongoing capacity with Genentech, and to coerce global royalties from Lilly's Taltz® under a

1    threat of intentionally excluding legitimate competition in the global marketplace.

2        **C.    Lilly Rejects Genentech's Offers to Sell its IL17A/F Portfolio**

3        Prior to apparently striking a deal with Novartis, Genentech first approached Lilly about

4    acquiring the IL17A/F Portfolio in December 2019 via in-house counsel, David Wildman, before

5    Genentech was due to file its substantive response following the PTAB's institution of the PGR

6    proceeding. Decl. ¶ 22. Lilly responded by informing Genentech that it was not interested in

7    purchasing a patent portfolio that was either not infringed or "hopelessly" invalid. *Id*. Genentech

8    asked Lilly if it could come back with its best offer, which Lilly believed should be of no more

9    than nuisance value to settle the ongoing litigations. *Id*.

10        Shortly thereafter, Genentech dismissed the U.S. action with prejudice after its patent was

11    canceled by the PTAB. S.D. Cal. Litig., Dkt. No. 73. After the conclusion of Genentech's failed

12    U.S. litigation, Genentech thereafter contacted Lilly again to discuss a potential royalty rate for

13    licensing the remnants of its IL17A/F portfolio in March 2020. Decl., ¶ 23. Lilly firmly rejected

14    Genentech's offer, reiterating to Genentech its position that, as with the U.S. '654 patent, the

15    remainder of the IL17A/F portfolio was equally invalid. *Id*. Meanwhile, Lilly was declared the

16    prevailing party in the S.D. Cal. Litigation and is currently seeking attorneys' fees on appeal.

17    S.D. Cal. Litig., Dkt. No. 77 (order declaring Lilly the prevailing party); Dkt. No. 93 (Lilly's

18    notice of appeal regarding attorneys' fees under 35 U.S.C. § 285).

19        Based on subsequent events, it appears that at some point before, during, and/or after the

20    time Genentech offered the IL17A/F portfolio to Lilly, Genentech shopped around the IL17A/F

21    portfolio to other suitors, including, on information and belief, UCB, Inc., which also separately

22    successfully petitioned the PTAB to institute a PGR of U.S. '654 patent. Decl., ¶ 24. Indeed,

23    UCB, Inc. must have also rebuffed Genentech's attempt to offload the IL17A/F portfolio, opting

24    instead to have the PTAB enter adverse judgment against Genentech in UCB's PGR. *UCB, Inc.*

25    *v. Genentech, Inc*., PGR2019-00044, Paper 23 (PTAB May 26, 2020). Genentech may have

26    made other unsuccessful attempts to divest itself of the IL17A/F portfolio and ultimately Novartis

27    acquired the entire portfolio. *See* Decl. ¶ 25.

28

**D.    Novartis Acquired and Asserted the IL17A/F Portfolio Unlawfully and for Anticompetitive Purposes**

Novartis has a strong incentive to engage in an anticompetitive campaign by acquiring and enforcing Genentech's patents.  Lilly's Taltz® is the primary competitor of Novartis' Cosentyx® globally.  *Id.*, ¶ 5.  It is no surprise, therefore, that after Novartis acquired the IL17A/F portfolio, it picked up where Genentech left off, immediately asserting EP '084 against Lilly in the German Action seeking to enjoin the sale of Lilly's Taltz®.  *Id.*, ¶ 26.  Although the parties settled the German Action, Novartis thereafter amped up its efforts with claims of infringement in Ireland, Italy, and Austria, seeking yet another injunction to halt global sales of Taltz®.  *See id.*, ¶ 27.

Novartis acquired the IL17A/F portfolio with full knowledge that the U.S. '654 patent and numerous European counterparts had been held invalid, *see supra*, and, as noted above, while it was actively seeking to invalidate at least two of its constituent patents.  Lilly believes that Novartis' purported acquisition was unlawful and motivated by anticompetitive intent, specifically to lessen or foreclose competition from its sole competitor, Taltz®, and protect Novartis' currently-dominant-but-declining market position with Cosentyx®.  Although Novartis has focused its initial efforts on Lilly, because Taltz® is Cosentyx®'s principal rival, other potential competitors, namely Merck KGaA and UCB Biopharma, both of whom have argued before the EPO for the invalidity of the EP '084 patent, may face a similar threat.  *See* Decl. ¶¶ 17, 28.  All of this is being carried out at the expense of consumers, here, the patients and users in need of Taltz®, which offers the more effective treatment of psoriasis, the sole reason why it has been gaining ground against Cosentyx®.

Lilly has an incomplete picture of the terms and conditions surrounding Novartis' acquisition of the IL17A/F portfolio.  In the German Action, Novartis submitted documentation indicating that Genentech had assigned and transferred the child EP '084 patent and all rights, claims and interests under that patent by virtue of a partially redacted "Patent Assignment"[3] and a "Delayed Patent Assignment," executed by Genentech's VP of Intellectual Property, Laurie Hill,

---

[3] Novartis also recorded the assignment of the IL17A/F portfolio in the USPTO by attaching the same May 7, 2020 Patent Assignment, however, with different redactions compared to the one it submitted in the German Action.

LILLY'S *EX PARTE* APPLICATION
PURSUANT TO 28 U.S.C. §1782

on May 7, 2020 and May 28, 2020 respectively. *Id.*, ¶ 29.  The transfer of claims and interests seems to have been confirmed by a separate "Assignment of claims from the German part of European Patent EP 2 784 084," also executed May 28, 2020 by Laurie Hill. *Id.*  In both the Patent Assignment and the Delayed Patent Assignment, Novartis makes explicit reference to an agreement that was concluded shortly before the assignment, the so-called "Asset Purchase, License, and Settlement Agreement," allegedly "effective April 23, 2020," which, to date, Novartis has refused to produce.[4] *Id.*, ¶ 30.

Because this documentation suggests that the purportedly assigned right of the child EP '084 patent being asserted against Lilly is subject to further terms and conditions set forth in the Asset Purchase, License, and Settlement Agreement, it is possible that the purchase and the alleged assignment of the IL17A/F portfolio, as purported by Novartis, did not take place at all or only on limiting or other potentially ongoing conditions.  It is also possible that certain aspects of this transfer resulted in simultaneous efforts by Novartis entities to both enforce and invalidate an asset in the IL17A/F portfolio, at Lilly's expense.

E.    **This Court Granted Lilly's Previous Section 1782 Application Requesting Discovery for Use in the German Action**

As described above, shortly after Novartis was purportedly assigned the child EP '084 patent—and even before Novartis AG withdrew its opposition thereto—it brought the German Action against Lilly GmbH. *Id.*, ¶ 21.  In response, Lilly asserted various competition defenses highlighting the impropriety of Novartis' behavior. *Id.*, ¶ 32.  Lilly's German subsidiary, Lilly GmbH, filed an application for discovery under Section 1782 before this Court. *See In re Ex Parte Application of Lilly Deutschland GmbH*, Case No. 4:30-mc-80164-KAW, Dkt. No. 1 (N.D. Cal. Sep. 22, 2020).

This Court found that Lilly GmbH had met both the statutory and *Intel* factors and granted Lilly GmbH's application, authorizing Lilly GmbH to serve subpoenas similar to those currently proposed on Genentech. *Id.*, Dkt. No. 8.  After serving the subpoenas, but before obtaining any

---

[4] Lilly requested disclosure of that purchase agreement from Novartis by letter of July 3, 2020. Counsel for Novartis expressly refused production via a letter dated July 10, 2020. Decl., ¶ 31.

11

1    discovery, Lilly GmbH and Novartis entered into an agreement to settle the German Action on

2    January 1, 2021, and Lilly GmbH agreed to withdraw the subpoenas. *Id*., Dkt. No. 11 (N.D. Cal.

3    Jan. 12, 2021). However, Novartis' revived enforcement campaign against Lilly necessitates the

4    need for that discovery and Lilly again requests the assistance of this Court under Section 1782.

5         **F.     Novartis' Subsequent Assertion of EP '084 Against Lilly**

6         Novartis' coordinated European litigation campaign against Lilly did not end with the

7    settlement of the German Action, as Novartis has subsequently alleged infringement of the EP

8    '084 patent in Ireland, Italy, and Austria. *See* Decl., ¶ 34. And due to Novartis' threats and

9    litigation pattern, Lilly further expects Novartis to assert its IL17A/F portfolio in various other

10   jurisdictions within Europe and around the world. *Id*., ¶ 35. In response to these allegations,

11   Lilly intends to assert various competition defenses and counterclaims similar to those it asserted

12   in the German Action. *Id*., ¶ 36. In addition, Lilly also plans to file a competition complaint

13   against Novartis before one or more Enforcement Agencies, including potentially the Italian

14   Antitrust Authority and the European Commission. *Id.* Discovery obtained under Section 1782

15   will be crucial to support Lilly's claims and/or defenses in these actions.

16        **1.     The Irish Actions**

17        On April 13, 2021, in anticipation of Novartis bringing an infringement action against

18   Lilly in Ireland, Lilly US filed a Petition in the High Court of Ireland seeking the revocation of

19   the Irish counterpart of EP '084 (High Court Record No. 2021/2PAP). *Id*., ¶ 37. Shortly

20   thereafter, Novartis issued infringement proceedings against Eli Lilly Kinsale Limited and Eli

21   Lilly Nederland B.V., Lilly US's Irish and Dutch subsidiaries, seeking a permanent injunction

22   and other relief (High Court Record No 2021 2527 P) (collectively, the "Irish Actions"). *Id*.

23   Lilly's defense to the infringement proceedings is due on July 2, 2021, and Lilly intends to assert

24   various competition claims (by way of defense and counterclaim) under European and Irish law,

25   for example, abuse of a dominant market position. *Id*., ¶ 38. Lilly believes that Novartis is

26   targeting Ireland as a forum and seeking a permanent injunction due to the presence of a global

27   manufacturing site for Taltz® there. *Id*., ¶ 39. Relevant documents obtained via Section 1782

28   will be submitted as evidence in support of both Lilly's defense and counterclaim in the

infringement action and potentially also in the revocation action. *Id.*, ¶ 40. While discovery has yet to begin in the Irish Actions, the Irish Court is likely to be receptive to the use of documents obtained under Section 1782 in the Irish Actions. *Id.*, ¶ 41.

### 2. The Italian PI Application and the Subsequent Italian Action

On April 16, 2021, Novartis and Novartis Farma S.p.A. (Novartis AG's Italian subsidiary) filed a PI application in the Court of Rome against Lilly Italia, seeking to force Taltz® from the market in Italy and prevent its future sale. *Id.*, ¶ 42. In support of its claims, Novartis alleged that an assignment of the Italian portion of European Patent EP 2 784 084 to Novartis Pharma AG occurred on November 13, 2020 and submitted a "Declaration of Assignment," attached as annex 10 to the PI application. *Id.*, ¶ 43. This Declaration of Assignment was dated and executed in Redwood City, California on December 14, 2020—also by Laurie Hill—during the pendency of the German Action at the time the parties were participating in settlement discussions. *Id.*, ¶ 44. Lilly does not possess, and Novartis did not attach, any documents reflecting the purported assignment dated November 13, 2020, in its PI application. *Id.*

In Lilly's May 14, 2021, reply to Novartis' Italian PI Application, Lilly argued that Novartis failed to make a prima facie case or show irreparable harm. *Id.*, ¶ 45. Lilly also asserted various competition defenses under European and Italian law based on Novartis' unlawful scheme to acquire and enforce the IL17A/F portfolio against Lilly, including for example, defenses based on abuse of a dominant market position under Article 102 of the Treaty on the Functioning of the European Union (TFEU) and Article 3, Italian Law 287/1990; and unfair competition under Articles 2598(3) and 2043 of the Italian Civil Code. *Id.* Recognizing the weakness of Novartis' arguments, the Court of Rome dismissed Novartis' Italian PI Application on June 1, 2021. *See id.*, ¶ 46. Novartis will have the option to appeal the Court of Rome's decision within 15 days of the June 1, 2021 decision with the Intellectual Property Division of the Court of Rome. *Id.*

In conjunction with the May 14, 2021 reply to Novartis' Italian PI Application, Lilly also instituted the Italian Action in the Court of Milan on the same day, seeking the revocation of and a declaration of non-infringement of the EP '084 patent (Docket Number 23649/2021). *Id.*, ¶ 47.

The Italian Action has no provision for discovery. *Id.*, ¶ 48. Lilly intends to submit documents obtained under Section 1782 in any potential appeal of Novartis' Italian PI Application, as well as the pending Italian Action to support its claims and defenses. *Id.*, ¶ 49. While the Italian Action has just begun, the documents obtained with the assistance of Section 1782 can be filed at the Court of Milan and would be taken into consideration by the Court in its decision. *Id.*, ¶ 50. Lilly believes that the Court of Rome will also be receptive to these documents. *Id.*

### 3.    The Austrian PI Application

On June 1, 2021, the same day it failed to obtain a PI in the Court of Rome, Novartis quickly shopped another forum and filed a new PI application in the Court of Vienna, Austria, against Eli Lilly Ges.m.b.H (Austria) and Eli Lilly Netherlands BV ("Austrian PI Application" or "Austrian Action"), seeking to force Taltz® from the market in Austria and prevent its future sale. *Id.*, ¶ 51. Similar to the Italian PI Application, Lilly plans to assert various competition law defenses in response to the Austrian PI Application. *Id.*, ¶ 52. Relevant documents obtained via Section 1782 will be submitted as evidence. *Id.* In addition, to the extent that either party files a related proceeding (*i.e.*, a main proceeding in Austria) with regards to the IL17A/F portfolio, Lilly intends to use the discovery obtained via Section 1782 in these other proceedings as well. *Id.*, ¶ 53. The Court of Vienna is likely to be receptive to the use of documents obtained under Section 1782. *Id.*, ¶ 54.

### 4.    Lilly's Anticipated Complaints to the Enforcement Agencies

Lilly intends to file a competition complaint against Novartis with one or more Enforcement Agencies, including potentially the European Commission and the IAA, alleging that Novartis' acquisition and subsequent assertion of Genentech's IL17A/F portfolio was designed to preserve Novartis' own currently dominant market position and to foreclose competition from Taltz® in violations of European and Italian competition law. *Id.*, ¶ 55. Lilly's counsel is in the process of preparing these complaints and intends to rely on documents and testimony obtained via Section 1782 to allege various competition law violations, including an abuse of a dominant market position. *Id.*, ¶ 56.

The European Commission is considered the "executive arm" of the European Union

("EU"), comprised of representatives from each member state. It is responsible for overseeing EU laws and treaties, including EU laws governing competition. The European Commission has the authority to conduct investigations, hearings and issue final administrative actions (*e.g.*, monetary penalties) that are reviewable in court, should a party be found in violation of EU competition laws. *See Intel*, 542 U.S. at 254-55. Similarly, the IAA is the competition regulator in Italy that also has the authority to conduct investigations, hearings, and issue final administrative actions that are reviewable in court. Decl., ¶ 57.

### G.    Lilly Seeks Highly Relevant Information That Will Assist in Foreign Proceedings

Lilly believes that information relating to Novartis' purported acquisition of the IL17A/F portfolio and its litigation and licensing conduct related thereto will be highly relevant to its competition law defenses in the foreign actions as well as Lilly's anticipated complaints with the Enforcement Agencies, where Lilly intends to assert competition theories of abusive acquisition of property rights and vexatious litigation as a violation of competition laws. Evidence that will assist these theories is likely in Genentech's possession. Lilly seeks limited document and deposition discovery from Genentech pertaining to three narrow, related categories of events: (1) Genentech's failed attempts to sell the IL17A/F portfolio to Lilly and other companies; (2) Genentech's evaluation of the IL17A/F portfolio; and (3) Genentech's negotiations with Novartis concerning the IL17A/F portfolio, the subsequent divestiture and ultimate purported assignment of the IL17A/F portfolio to Novartis, and any ongoing agreements between Genentech and Novartis concerning the IL17A/F portfolio or Cosentyx®.

Lilly also seeks to depose no more than three Genentech witnesses knowledgeable about the subject matter of these requests, namely David Wildman, the Genentech in-house counsel who offered to sell the IL17A/F portfolio to Lilly; Laurie Hill, the Genentech executive who executed the assignments of the child EP '084 patent, including at least its German and Italian counterparts, from Genentech to Novartis; and a knowledgeable corporate witness who is prepared to speak to any of the above-enumerated topics not covered by Wildman and/or Hill. A full copy of Lilly's proposed subpoenas are attached hereto as Exhibits B-E.

## H.    The Need for Section 1782 Discovery

Documents in Genentech's possession will prove facts of relevance to multiple aspects of Lilly's claims and defenses in the Italian, Irish, and Austrian Actions, as well as the contemplated competition complaints.  Specifically, the discovery that Lilly seeks will reveal the exact scope of the rights granted in the assignment; any conditions imposed on and consideration paid for Genentech's assignment, sale, or other form of transfer to Novartis; Genentech's representations about the status and quality of the IL17A/F portfolio to Novartis and others; Genentech's efforts to divest the IL17A/F portfolio to other potential buyers, including Genentech's internal determination of the conditions to do so; Novartis' rationale for purchasing the IL17A/F patent portfolio; and Novartis' views and opinions on the validity and enforceability of the IL17A/F patent portfolio.  Lilly intends to submit documents relating to each of these topics as evidence in the pending and anticipated actions described herein.  *See* Decl. ¶ 58.

Lilly cannot obtain the requested discovery from Genentech in the foreign proceedings, as Genentech is not a party and thus outside of the foreign courts' jurisdictional reach.  Many of the documents are in Genentech's possession alone and, even to the extent that some subset of the requested materials requested may be in Novartis' possession, are not available to Lilly.  For example, Lilly has requested that Novartis produce a copy of the purchase agreement by which Novartis purportedly acquired the IL17A/F portfolio from Genentech in the earlier German Action, but Novartis refused to produce it, and Lilly expects the same response from Novartis in the Irish, Italian, and Austrian Actions.  *See id*., ¶ 31.  None of the European Courts at issue has expressed any opinion that they would not admit or be unreceptive to evidence obtained by Lilly under this application.  *Id*., ¶ 59.  Evidence produced in response to this application should therefore be admitted by the Irish, Italian, and Austrian Courts.  *See infra*, Section V.B.2. Without this Court's assistance, Lilly will be unable to obtain this discovery.

## IV.    LEGAL STANDARD

The purpose of Section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal."  *Intel*, 542 U.S. at 247.  Section 1782 provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). Section 1782 sets forth three threshold statutory requirements that authorize a district court to grant a Section 1782 application, which include: "(1) the discovery is sought from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an 'interested person.'"  *In re Ex Parte Apple Inc*., No. MISC 12-80013 JW, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012).

Once the statutory requirements are met, a district court considers several discretionary factors set forth by the Supreme Court in *Intel* to determine whether to grant discovery. These factors include: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264-65.

## V.    ARGUMENT

### A.    Lilly's Application Meets the Section 1782 Statutory Requirements

Lilly's application meets all three statutory Section 1782 requirements. First, Genentech is a California corporation headquartered at 1 DNA Way, South San Francisco, California 94080, which is located within this District. As such, Genentech "resides" in this District.

Second, the discovery is sought for use in ongoing and anticipated "proceeding[s] before a foreign tribunal." 28 U.S.C. § 1782(a). Specifically, Lilly seeks the information for use in patent litigation pending against Novartis in the High Court of Ireland, the Court of Rome (should

Novartis appeal), the Court of Milan, the Court of Vienna, and anticipated proceedings in one or more Enforcement Agencies, potentially including the European Commission and IAA.  District Courts have previously held that courts in Ireland, Italy, and Austria, as well as the European Commission and similar administrative agencies, all qualify as "tribunals" for the purposes of Section 1782.  *See In re Ex Parte Caterpillar Inc*., No. 3:19-mc-0031, 2020 U.S. Dist. LEXIS 70913 (M.D. Tenn. Apr. 21, 2020) (finding that the applicant met the statutory factors for patent infringement actions located in Milan, Genoa, and Turin); *In re Request for Subpoena by Ryanair Ltd*., No. 5:14MC80270-BLF-PSG, 2014 WL 5583852, at *1 (N.D. Cal. Oct. 31, 2014) (finding the statutory factors satisfied as to proceedings before the Dublin Circuit Court in Ireland); *In re Roz Trading Ltd*., 469 F. Supp. 2d 1221 (N.D. Ga. 2006) (finding that an international commercial arbitral body in Austria was a "tribunal" under the statutory factors); *In re: Request for Jud. Assistance from the Dist. Ct. Landeck, Austria in the Matter of Thomas Erich Meinrad Praxmarer*, No. 3:20-MC-6-J-32PDB, 2020 WL 1673652, at *3 (M.D. Fla. Apr. 3, 2020) (finding the statutory factors satisfied for a civil case pending in Austria); *Intel*, 542 U.S. at 255 (finding that the European Commission qualifies as a foreign tribunal since it is capable of issuing "a final administrative action both responsive to the complaint and reviewable in court"); *In re Ex Parte Application of Qualcomm Inc*., 162 F. Supp. 3d 1029, 1038 (N.D. Cal. 2016) (holding that the Korean Fair Trade Commission, South Korea's administrative agency that enforces compliance with the Republic of Korea's Monopoly Regulation and Fair Trade Act, qualifies as a foreign tribunal).

In addition, the anticipated submissions to the Enforcement Agencies are "within reasonable contemplation," as Lilly's counsel is currently in the process of drafting the competition complaints and intends to engage the Enforcement Agencies and take appropriate actions soon.  *Intel*, 542 U.S. 259 (noting that Section 1782 does not require that the anticipated proceeding be "pending" or "imminent"); *see also In re Top Matrix Holdings Ltd*., No. 18 MISC. 465 (ER), 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020) (finding that "sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement") (citing *In re Hornbeam Corp*.,

1 | 722 F. App'x 7, 9–10 (2d Cir. 2018)).

2 |       Third, as the named party in the pending Irish, Italian, and Austrian Actions, and the

3 | presumptive complainant in the anticipated competition complaints before the Enforcement

4 | Agencies, Lilly qualifies as an "interested" party.  28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 256

5 | (holding that there is "[n]o doubt litigants are included among . . . the 'interested person[s]' who

6 | may invoke § 1782"); *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-MC-80048-

7 | MEJ, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016) (finding that the applicant "qualifies as

8 | an 'interested person' because it is a participant in the foreign proceeding").

9 |       Accordingly, Lilly has satisfied the statutory requirements for an application under 28

10 | U.S.C. § 1782.

11 |     **B.**    **The Discretionary *Intel* Factors Weigh in Favor of Granting Lilly's**
| |           **Application**

12 |

13 |       **1.**    **Genentech is Not a Party to the Pending Actions Before the European**
| |             **Courts and the Contemplated Enforcement Agencies**

14 |       The first *Intel* factor turns on whether the foreign court has the jurisdiction to order the

15 | requested evidence to be produced.  *See Intel*, 542 U.S. at 254.  This factor weighs in favor of

16 | discovery if the party from whom discovery is sought is not a party to the foreign litigation,

17 | because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's

18 | jurisdictional reach; hence, their evidence [] may be unobtainable absent § 1782(a) aid."  *Intel*,

19 | 542 U.S. at 264.

20 |       Additionally, courts have found this factor to favor discovery when the foreign court does

21 | not allow the same degree of discovery as is allowed in the United States.  *See, e.g.*, *Heraeus*

22 | *Kulzer, GmbH v. Biomet, Inc*., 633 F.3d 591, 597 (7th Cir. 2011) (granting Section 1782

23 | discovery because a foreign litigant could not "obtain even remotely comparable discovery by

24 | utilizing [foreign] procedures"); *Illumina Cambridge Ltd. v. Complete Genomics, Inc*., No. 19-

25 | MC-80215-WHO(TSH), 2020 WL 820327, at *4 (N.D. Cal. Feb. 19, 2020) (holding that the first

26 | *Intel* factor weighs in favor of discovery when the foreign court provides "no right to pretrial

27 | discovery comparable to that in the United States").

28 |       In the present case, Genentech is not a party to the pending actions in the European Courts

1  and the anticipated Enforcement Agency complaints.  Thus, Genentech is beyond the

2  jurisdictional reach of those tribunals.  As a result, Lilly is unable to request or obtain any

3  evidence from Genentech through the use of limited discovery procedures and requires the aid of

4  Section 1782 to obtain the needed discovery.  Thus, the first *Intel* factor weighs in favor of

5  discovery.

6              **2.**       **The Relevant Foreign Courts Are Receptive to U.S. Judicial Assistance**

7         The second *Intel* factor considers "the nature of the foreign tribunal, the character of the

8  proceedings underway abroad, and the receptivity of the foreign government or court or agency

9  abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264.  "This factor focuses on

10  whether the foreign tribunal is willing to consider the information sought."  *Varian*, 2016 WL

11  1161568 at *4.  "'In the absence of authoritative proof that a foreign tribunal would reject

12  evidence obtained with the aid of section 1782,' courts tend to 'err on the side of permitting

13  discovery.'"  *Id.* (quoting *In re Kreke Immobilien KG*, No. 13 MISC. 110 NRB, 2013 WL

14  5966916, at *1 (S.D.N.Y. Nov. 8, 2013), abrogated on other grounds by *In re del Valle Ruiz*, 939

15  F.3d 520 (2d Cir. 2019)).

16         When there is no evidence suggesting that the foreign tribunal would *not* be receptive to

17  the discovery sought, courts in this District have found that the second *Intel* factor weighs in favor

18  of granting a Section 1782 application.  *See Varian*, 2016 WL 1161568 at *4 (the second *Intel*

19  factor weighs in favor of discovery when "[t]here is no evidence or case law suggesting that the

20  [foreign court] would be unreceptive to the discovery Varian seeks"); *In re Ex Parte Apple Inc.*,

21  2012 WL 1570043 at *2 (the second *Intel* factor favors discovery when there is "no evidence to

22  suggest that the [foreign] courts would disallow such evidence").  Accordingly, this factor weighs

23  even more strongly in favor of discovery when the foreign tribunal is expected to be receptive to

24  the information requested, or when other district courts routinely grant Section 1782 applications

25  for a particular foreign court.  *See In re Google Inc.*, No. 14-MC-80333-DMR, 2014 WL

26  7146994, at *3 (N.D. Cal. Dec. 15, 2014) (second *Intel* factor weighs in favor of discovery when

27  the foreign tribunal "can be expected to be receptive to the information obtained by this request");

28  *In re Apple Retail UK Ltd.*, No. 20-MC-80109-VKD, 2020 WL 3833392, at *3 (N.D. Cal. July 8,

2020) (second *Intel* factor supports discovery when "other district courts in other cases have recognized that U.K. courts have been receptive to discovery obtained by means of a § 1782 application").

Here, the European Courts and the relevant Enforcement Agencies have not stated that they would not admit or be unreceptive to evidence obtained by Lilly under Section 1782.  *See* Decl. ¶ 31.  In addition, U.S. district courts have routinely granted applications under Section 1782 for evidence to be used in similar foreign tribunals.  *See, e.g.*, *In re Ex Parte Caterpillar Inc.*, 2020 U.S. Dist. LEXIS 70913 (M.D. Tenn. Apr. 21, 2020) (granting discovery for use in Italian patent infringement actions in Milan, Genoa, and Turin); *In re Danieli & C. Officine Meccaniche S.p.A.*, No. 18-372, 2018 U.S. Dist. LEXIS 94936 (W.D. Pa. June 6, 2018) (granting discovery for use in patent infringement proceedings in the Court of Venice); *HT S.R.L. v. Velasco*, No. MC 15-664 (RBW), 2015 WL 13759884 (D.D.C. Nov. 13, 2015) (granting discovery for use in Italian civil proceeding); *In re Roebers*, No. C12-80145 MISC RS LB, 2012 WL 2862122 (N.D. Cal. July 11, 2012) (noting that the "[applicant] provided authorities showing the prior receptivity of Irish courts to discovery acquired with the assistance of American courts, and the Court has no reason to believe that the reception to the discovery requested here would differ in any significant manner."); *In re Request for Subpoena by Ryanair Ltd.*, No. 5:14MC80270-BLF-PSG, 2014 WL 5583852 (N.D. Cal. Oct. 31, 2014) (granting discovery for use in Irish proceeding); *McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003) (same); *In re NRC Holding, Ltd.*, No. 14-MC-61962, 2015 WL 541770 (S.D. Fla. Feb. 10, 2015) (same); *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221 (N.D. Ga. 2006) (granting discovery for use before a commercial arbitral body in Austria); *In re: Request for Jud. Assistance from the Dist. Ct. Landeck, Austria in the Matter of Thomas Erich Meinrad Praxmarer*, No. 3:20-MC-6-J-32PDB, 2020 WL 1673652 (M.D. Fla. Apr. 3, 2020) (granting discovery for use in Austrian civil action); *Qualcomm Inc. v. Apple Inc.*, No. 18-MC-80134-PJH, 2021 WL 879817 (N.D. Cal. Mar. 9, 2021) (granting discovery for use in European Commission appeal).  Thus, the second *Intel* factor weighs in favor of granting discovery.

### 3.    No Foreign Discovery Restrictions Bar Lilly's Requested Discovery

The third *Intel* factor considers whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *Intel*, 542 U.S. at 265.  Section 1782 does not require that the documents sought be discoverable in the foreign courts.  *See id.* at 243.  Absent any evidence suggesting that the applicant is attempting to circumvent foreign proof-gathering restrictions, this factor weighs in favor of discovery.  *See In re Eurasian Nat. Res. Corp. Ltd.*, No. 18-mc-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018) (finding that the third Intel factor weighed in favor of discovery where there was "no evidence" of an attempt to circumvent foreign proof-gathering restrictions or policies); *In re Apple Retail UK Ltd.*, 2020 WL 3833392 at *3 (same); *In re Google Inc.*, 2014 WL 7146994 at *3 (N.D. Cal. Dec. 15, 2014) (same).

Here, there are no restrictions on proof-gathering procedures that would prohibit obtaining the discovery Lilly seeks through Section 1782 and such discovery would be received as evidence in the pending actions in the European Courts and the anticipated actions in the Enforcement Agencies.  Moreover, U.S. district courts have routinely granted applications under Section 1782 for evidence to be used in Irish, Italian, and Austrian Courts, as well as the European Commission and other tribunals similar to the Enforcement Agencies.  *See supra*, Section (B)(3).  Thus, the third *Intel* also weighs in favor of granting discovery.

### 4.    Lilly's Discovery is Narrowly Tailored and Not Unduly Intrusive or Burdensome

The fourth *Intel* factor considers whether the request is narrowly tailored and minimally burdensome.  *See Intel*, 542 U.S. at 265 (noting that "unduly intrusive or burdensome requests may be rejected or trimmed").  Courts apply Federal Rule of Civil Procedure 26 to assess whether the discovery sought is overbroad or unduly burdensome.  *See, e.g.*, *In re Illumina Cambridge Ltd.*, No. 19-MC-80215-WHO (TSH), 2019 WL 5811467, at *5 (N.D. Cal. Nov. 7, 2019) (quoting Fed. R. Civ. P. 26).  Under Rule 26, parties may obtain discovery relevant to any party's claim or defense that is proportional to the needs of the case.

Lilly's discovery requests are narrowly tailored and relate to a small, discrete set of

1   documents and communications surrounding three discrete categories of events as described

2   above and related to the IL17A/F portfolio to demonstrate Novartis' and any other ownership or

3   divesture thereof.  Especially given the recent occurrence of the events in question, Lilly

4   anticipates that documents responsive to the request are easily identifiable, and Genentech could

5   provide these documents to Lilly with minimal effort.  These types of "deal" documents are

6   paradigmatic discovery that is appropriately granted in Section 1782 proceedings.  *See, e.g.*, *In re*

7   *Ex Parte Apple Inc*., 2012 WL 1570043 at *3 (N.D. Cal. May 2, 2012) (finding that a Section

8   1782 request for license agreements and related correspondence is not unduly intrusive or

9   burdensome); *IPCom GMBH & Co. KG v. Apple Inc*., 61 F. Supp. 3d 919, 925 (N.D. Cal. 2014)

10  (denying respondent's motion to quash and ordering the production of patent license agreements

11  for use in foreign patent litigation); *In re Ex Parte LG Elecs. Deutschland GmbH*, No.

12  12CV1197-LAB MDD, 2012 WL 1836283 (S.D. Cal. May 21, 2012) (granting discovery of

13  patent license agreements for use in foreign patent infringement action).

14          In addition, these documents are relevant to Lilly's claims and defenses in the pending

15  actions in the European Courts and the anticipated competition complaints before the

16  Enforcement Agencies.  Lilly plans to utilize this evidence in direct support of its claims and/or

17  defenses under European, Irish, Italian, and Austrian laws relating to, *e.g.*, Novartis' purported

18  acquisition of the IL17A/F portfolio and its litigation and licensing conduct related thereto.  The

19  requested evidence—a discrete universe of documents and information regarding Genentech's

20  attempts to sell, technical and monetary valuation, and divestiture of the IL17A/F portfolio—is

21  highly relevant to Lilly's potential claims and defenses, such as the competition defenses,

22  described herein.  Accordingly, this final *Intel* factor supports discovery since Lilly's request is

23  directly tailored to its legitimate needs.

24  **VI.    CONCLUSION**

25          Lilly's application satisfies Section 1782's statutory requirements and the *Intel* factors

26  weigh in favor of granting the application.  Lilly respectfully requests that this Court grant Lilly's

27  *ex parte* application by entering the proposed order attached as Exhibit A and authorizing Lilly to

28  serve the subpoenas substantially similar to those attached as Exhibits B-E.

1

2    Dated:  June 16, 2021                    Dechert LLP

3

4                                       By: */s/ Jonathan D.J. Loeb*

5                                          Jonathan D.J. Loeb
                                          State Bar No. 211749
6                                          Katherine A. Helm
                                          *Pro Hac Vice* (to be submitted)
7                                          Sharon K. Gagliardi
                                          *Pro Hac Vice* (to be submitted)
8                                          DECHERT LLP

9                                          *Counsel for Applicants Eli Lilly and*
                                          *Company; Eli Lilly Italia S.p.A; Eli Lilly*
10                                          *Kinsale Limited; Eli Lilly Ges.m.b.H.; and*
                                          *Eli Lilly Nederland B.V.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

3

4

*In re Ex Parte Application* of

Case No. _____

5

Eli Lilly and Company; Eli Lilly Italia S.p.A;
Eli Lilly Kinsale Limited; Eli Lilly
Ges.m.b.H.; and Eli Lilly Nederland B.V.,

6

**[PROPOSED] ORDER GRANTING *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

7

Applicants,

8

For an Order Pursuant to 28 U.S.C. § 1782
Granting Leave to Obtain Discovery for Use
in Foreign Proceedings

9

10

11         WHEREAS Eli Lilly and Company, Eli Lilly Italia S.p.A, Eli Lilly Kinsale Limited, Eli

12     Lilly Nederland B.V, and Eli Lilly Ges.m.b.H. (collectively "Lilly") filed an *Ex Parte* Application

13     for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery For Use in

14     Foreign Proceedings (the "Application"), in order to obtain document and deposition discovery

15     from Genentech, Inc., 1 DNA Way, South San Francisco, California 94080 ("Genentech").

16         WHEREAS this Court being of the opinion that approval of this Application is proper

17     under the provisions of 28 U.S.C. § 1782(a); it is hereby:

18         **ORDERED** that the Application is **GRANTED**; and it is further

19         **ORDERED** that counsel for Lilly may seek the requested discovery from Genentech and

20     issue subpoenas for documents and testimony substantially similar to those attached as Exhibits

21     B-E to the Application, commanding Genentech to produce the documents and testimony

22     requested in the subpoenas, and enforce such discovery consistent with Federal Rule of Civil

23     Procedure 45 and other applicable law.

24     **IT IS SO ORDERED.**

25     DATED: _____

26                                                          _____
                                                          United States District Judge

27                                                          United States District Court for the
                                                          Northern District of California

28

Dechert LLP
Attorneys At Law
Silicon Valley

[PROPOSED] ORDER GRANTING EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C.
§ 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

# EXHIBIT B

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| In re Ex Parte Application of Eli Lilly and Company et al. | )<br>)<br>) |
| *Plaintiff* | |
| v. | )     Civil Action No. |
| | )<br>) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Genentech, Inc.,
1 DNA Way, South San Francisco, California 94080
c/o CSC Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

      See attached.

| Place: Dechert LLP<br>       3000 El Camino Real, Five Palo Alto Square, Suite 650<br>       Palo Alto, CA 94306-2112 | Date and Time: |
|---|---|

    ❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

        *CLERK OF COURT*
                            OR

_____    _____
      *Signature of Clerk or Deputy Clerk*                       *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Eli Lilly and Company, et al.
_____ , who issues or requests this subpoena, are:
Jonathan D.J. Loeb, 3000 El Camino Real, Five Palo Alto Square, Suite 650, Palo Alto, CA 94306-2112, Tel: (650) 813-4995
Katherine A. Helm, Three Bryant Park, 1095 Avenue of the Americas, New York, New York 10036-6797, Tel: (212) 698-3559

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

<h2 style="text-align:center">PROOF OF SERVICE</h2>

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## <u>SCHEDULE A FOR RULE 45 SUBPOENA TO GENENTECH, INC.</u>

## <u>DEFINITIONS</u>

1.      "YOU," "YOUR" or "Genentech" mean Genentech, Inc., and its directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on its behalf, or within its control, and any person through whom or through which it conducts business.

2.      "Lilly" means Eli Lilly Italia S.p.A., Eli Lilly Kinsale Limited, Eli Lilly Nederland B.V., Eli Lilly Ges.m.b.H., Lilly Deutschland GmbH, or Eli Lilly & Company, Limited, and its directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on its behalf, or within its control, and any person through whom or through which it conducts business.

3.      "Novartis" means Novartis Pharma AG, Novartis AG, Novartis International AG, Novartis Farma S.p.A, or Novartis Pharmaceuticals Corporation and its directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on its behalf, or within its control, and any person through whom or through which it conducts business.

4.      "German Action" means the litigation between Novartis Pharma AG and Lilly Deutschland GmbH in the Mannheim Regional Court in Germany, Dkt. No. 2O 59/20, as well as any defensive actions instituted in response to the claims that were raised in Dkt. No. 2O 59/20.

5.      "Irish Actions" means the litigation between Novartis Pharma AG and Eli Lilly and Company in the High Court of Ireland, Record No. 2021/2 PAP, as well as any actions instituted in response to the claims that were raised in Record No. 2021/2 PAP.

6.      "Italian PI Application" means the litigation between Novartis Pharma AG and Novartis Farma S.p.A. on one side and Eli Lilly Italia S.p.a. on the other side, filed on April 16, 2021 in the Court of Rome, Docket Number 25087/2021, and any resulting appeal.

7.      "Italian Action" means the litigation between Novartis Pharma AG and Novartis Farma S.p.A. on one side, and Eli Lilly Italia S.p.A. on the other side, filed on April 16, 2021 in the Court of Milan (Docket Number 23649/2021).

8.      "Austrian Action" means the litigation between Novartis Pharma AG on one side, and Eli Lilly Ges.m.b.H. and Eli Lilly Netherlands BV the other side, filed on June 1, 2021 in the Court of Vienna, Austria.

9.       "IL17A/F portfolio" means any patents or patent applications originally owned by Genentech that are directed to IL17A/F, including European Patent No. 2,784,084 ("EP '084 patent"), European Patent No. 1,641,822 ("EP '822 patent"), United States Patent No. 10,011,654 ("U.S. '654 patent") and any continuation, continuation-in-part, divisional or other patent application (either U.S. or foreign) claiming benefit to or priority from any of the above patents, including patents of addition, reissue patents, reexamination certificates, supplementary protection certificates, and patent term extensions.

10.       "U.S. '654 patent PGRs" means the Post Grant Review Proceedings, Case Nos. PGR2019-00043 and PGR2019-00044, before the United States Patent and Trademark Office.

11.      "Acquisition" means any means of obtaining possession and/or rights, including but not limited to assignment, agreement, transfer and/or purchase.

12.      "Valuation" means, when used in reference to the IL17A/F portfolio, any estimation or assessment of worth, including but not limited to any assessment or estimation as to monetary value, validity, enforceability, scope of the claims, strengths, and/or weaknesses.

13.     "Document" has the broadest meaning accorded that term by Federal Rule of Civil Procedure 34 and includes, but is not limited to, electronic compilations, databases, and all of the items defined in Federal Rules of Evidence 1001, and all preliminary and final drafts of any such items. Any original or copy of a document containing or having attached to it any alterations, notes, comments, or other material not included in the first document shall be deemed a separate document. Any English language translation of a requested document shall be deemed a separate document.

9.     "Person" and "persons" mean any individual in any capacity whatsoever or any entity or organization, including divisions, subsidiaries, departments, and other units therein, and shall include a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

10.     "Individual" means a natural person.

11.     "Communication" means all written, electronic, oral, telephonic, or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, telegrams, advertisements, computer mail, e-mail, and all other documents or things evidencing any verbal or nonverbal interaction between persons and entities.

12.     The use of a verb in any tense shall be construed as including the use of the verb in all other tenses.

13.     The singular final of any word shall be deemed to include the plural, and the plural form of any word shall be deemed to include the singular.

14.    "Or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear as necessary to make the request inclusive rather than exclusive, and neither of these words shall be interpreted to limit the scope of these Requests; "or" means "and/or."

15.    The word "any" means one or more.

16.    The word "including" means including but not limited to.

17.    The terms "relate to", "relating to", and "concerning" and all variations thereof mean: relating to, referring to, pertaining to, regarding, concerning, identifying, containing, reflecting, describing, discussing, evidencing, embodying, constituting or showing, or in any way logically or factually connected with the matter discussed or identified.

18.    The term "made available to" means any form of disclosure via any means, including oral or written.

19.    The term "legal action" means any past, present, or contemplated legal or administrative proceeding before any tribunal.

## INSTRUCTIONS

1.    The documents and things requested below are those that were created, modified, sent, or received at any time.

2.    Electronic records and computerized information must be produced in an intelligible font, together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

3.    Selection of documents from files and other sources and the numbering of such documents shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

4.      File folders with tabs or labels or directories of files identifying documents called for by these requests must be produced intact with such documents.

5.      Documents attached to each other shall not be separated.

6.      All responsive documents must be produced, regardless of whether such documents are possessed directly by YOU or are possessed by any of YOUR officers, directors, employees, agents, representatives or attorneys.

7.      If no documents are responsive to a particular request, YOU are to state that no responsive documents exist.

8.      Where an identified document is in a language other than English, state whether or not an English language translation of such documents exists and, if so, identify it.

9.      These requests shall be deemed continuing so as to require further and supplemental production in accordance with the Federal Rules of Civil Procedure.

10.      Should YOU seek to withhold any document based on some limitation of discovery (including a claim of privilege), supply a list of the documents for which limitation of discovery is claimed, indicating:

    a.      the identity of each document's author, writer, sender, or initiator;

    b.      the identity of each document's recipient, addressee, or person for whom it was intended;

    c.      the date of creation or transmittal indicated on each document or an estimate of that date, indicated as such, if no date appears on the document;

    d.      a listing of all persons, including addressees, to whom either copies of, or information set forth in, the document or thing have been disclosed, including the date and means of such disclosure;

e.    the general subject matter as described on each document, or, if no such description appears, then another description sufficient to identify the document; and

f.    the nature of the privilege or other rule of law relied upon to withhold the document or thing and the facts supporting YOUR assertion thereof.

11.    If any documents or things requested to be produced herein have been lost, discarded, destroyed, or are not available for production by YOU for any reason whatsoever, identify them as completely as possible, by stating without limitation: the information requested by paragraphs (10) (a)-(f) above, the date of disposal, the manner of disposal, the reason for disposal, any person, firm, or corporation who has possession, custody, or control of a partial or complete copy of such document, and the identity of all persons who participated in the destruction or discarding or who have knowledge of the date and circumstances surrounding the destruction of the document or thing.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Documents and communications of Genentech and between Genentech and third parties regarding Genentech's decision, efforts and attempts to sell, license, transfer, assign or otherwise divest the IL17A/F portfolio to any third party, including but not limited to Lilly and Novartis.

2.    Documents and communications of Genentech and between Genentech and third parties that relate to the alleged validity and enforceability of the IL17A/F portfolio.

3.    Documents and communications between Genentech and Novartis that relate to any opposition to any patent of the IL17A/F portfolio, before any patent office, administrative tribunal or court worldwide, including all existing English translations of such documents and

6

communications, including but not limited to any documents submitted by Novartis that have been made available to Genentech.

4.      Documents and communications relating to Genentech's assignment(s) of the IL17A/F portfolio to Novartis, including but not limited to all documents and communications relating to an "Asset Purchase, License, and Settlement Agreement," allegedly "effective April 23, 2020," as well as all related assignment documents, including a "Patent Assignment" dated May 7, 2020; a "Delayed Patent Assignment," dated May 28, 2020; and individualized territory assignments including "Delayed Patent Assignment," dated June 8, 2020; "Assignment of claims from the German part of European Patent EP 2 784 084" dated May 28, 2020, the assignment of the Italian portion of European Patent EP 2 784 084 to Novartis Pharma AG dated November 13, 2020, the Declaration of Assignment dated December 14, 2020 attached as annex 10 to Novartis' Preliminary Injunction Application filed in Italy in Court of Rome proceedings  Docket Number 25087/2021, excerpt from the UIBM database regarding EP 2 784 084 filed as annex 11 to Novartis' Preliminary Injunction Application in Italy in Court of Rome proceedings Docket Number 25087/2021, any assignment of the Irish portion of European Patent EP 2 784 084 to Novartis, and any assignment of the Austrian portion of European Patent EP 2 784 084 to Novartis.

5.      Documents and communications relating to Genentech's assignment of the right to collect back damages for any alleged infringement of the IL17A/F portfolio to Novartis.

6.      Documents sufficient to show the consideration received by Genentech in connection with Novartis' purported acquisition of the IL17A/F portfolio, including any royalties for the use of any invention covered by IL17A/F portfolio.

7.     Documents and communications of Genentech and between Genentech and Novartis that relate to any contemplated or instituted proceedings before any tribunal in any jurisdiction related to the IL17/AF portfolio, including *Genentech v. Lilly,* Fed. Cir. Case No. 2021-1874.

8.      Documents and communications between Genentech and Novartis that relate to any efforts by Novartis to license the IL17A/F portfolio to Lilly following Novartis' purported acquisition of the IL17A/F portfolio.

9.     Executed agreements that relate to any ongoing interest maintained by Genentech, including a financial relationship between Genentech and Novartis, with respect to the IL17A/F portfolio or with respect to any sales of Cosentyx® (*secukinumab*).

10.     Documents sufficient to show Genentech's valuation of the IL17A/F portfolio before as well as on or after the October 7, 2019 institution date of the '654 patent PGRs, including but not limited to the exclusion of ownership of and inclusion of the right to claim to priority to the '654 patent.

11.     Documents and  communications of Genentech and between Novartis and Genentech concerning legal action against Lilly related to the IL17A/F portfolio, including but not limited to the relative timing between Genentech's withdrawal of its infringement proceedings against Lilly entities in Düsseldorf, Novartis AG's withdrawal of its opposition to the EP '084 patent, and Novartis' commencement of the German Action, as well as Novartis' withdrawal of the German Action, Novartis' commencement of the Italian PI Application, Novartis' conduct in connection with the Italian Action, Novartis' conduct in connection with the Irish Actions, and Novartis' commencement of the Austrian Action.

# EXHIBIT C

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

### Northern District of California

| | | |
|---|---|---|
| In re Ex Parte Application of Eli Lilly and Company et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                   David Wildman

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | Dechert LLP | Date and Time: |
|---|---|---|
| | 3000 El Camino Real, Five Palo Alto Square, Suite 650 | |
| | Palo Alto, CA 94306-2112 | |

The deposition will be recorded by this method:  video, audio, and stenographic recording

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  The originals (or true and correct copies if originals do not exist) of all documents, electronically stored information and other things in your possession that are responsive to the requests set forth in Schedule A attached hereto.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

                *CLERK OF COURT*

                                        OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Eli Lilly and Company, et al.
_____, who issues or requests this subpoena, are:
Jonathan D.J. Loeb, 300 El Camino Real, Five Palo Alto Square, Suite 650, Palo Alto, CA 94306-2112, Tel: (650) 813-4995
Katherine A. Helm, Three Bryant Park, 1095 Avenue of the Americas, New York, New, York 10036-6797, Tel: (212) 698-3559

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
   **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***

   **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
   **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
   **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A FOR RULE 45 SUBPOENA TO DAVID WILDMAN

## DEFINITIONS

1.      "YOU" or "YOUR" means David Wildman, and any directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on your behalf, or within your control, and any person through whom or through which you conduct business.

2.      "Genentech" means Genentech, Inc., and its directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on its behalf, or within its control, and any person through whom or through which it conducts business.

3.      "Lilly" means Eli Lilly Italia S.p.A., Eli Lilly Kinsale Limited, Eli Lilly Nederland B.V., Eli Lilly Ges.m.b.H., Lilly Deutschland GmbH, or Eli Lilly & Company, Limited, and its directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on its behalf, or within its control, and any person through whom or through which it conducts business.

4.      "Novartis" means Novartis Pharma AG, Novartis AG, Novartis International AG, Novartis Farma S.p.A, or Novartis Pharmaceuticals Corporation and its directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on its behalf, or within its control, and any person through whom or through which it conducts business.

5.      "German Action" means the litigation between Novartis Pharma AG and Lilly Deutschland GmbH in the Mannheim Regional Court in Germany, Dkt. No. 2O 59/20, as well as any defensive actions instituted in response to the claims that were raised in Dkt. No. 2O 59/20.

6.    "Irish Actions" means the litigation between Novartis Pharma AG and Eli Lilly and Company in the High Court of Ireland, Record No. 2021/2 PAP, as well as any actions instituted in response to the claims that were raised in Record No. 2021/2 PAP.

7.    "Italian PI Application" means the litigation between Novartis Pharma AG and Novartis Farma S.p.A. on one side and Eli Lilly Italia S.p.a. on the other side, filed on April 16, 2021 in the Court of Rome, Docket Number 25087/2021, and any resulting appeal.

8.    "Italian Action" means the litigation between Novartis Pharma AG and Novartis Farma S.p.A. on one side, and Eli Lilly Italia S.p.A. on the other side, filed on April 16, 2021 in the Court of Milan (Docket Number 23649/2021).

9.    "Austrian Action" means the litigation between Novartis Pharma AG on one side, and Eli Lilly Ges.m.b.H. and Eli Lilly Netherlands BV the other side, filed on June 1, 2021 in the Court of Vienna, Austria.

10.    "IL17A/F portfolio" means any patents or patent applications originally owned by Genentech that are directed to IL17A/F, including European Patent No. 2,784,084 ("EP '084 patent"), European Patent No. 1,641,822 ("EP '822 patent"), United States Patent No. 10,011,654 ("U.S. '654 patent") and any continuation, continuation-in-part, divisional or other patent application (either U.S. or foreign) claiming benefit to or priority from any of the above patents, including patents of addition, reissue patents, reexamination certificates, supplementary protection certificates, and patent term extensions.

11.    "U.S. '654 patent PGRs" means the Post Grant Review Proceedings, Case Nos. PGR2019-00043 and PGR2019-00044, before the United States Patent and Trademark Office.

12.    "Acquisition" means any means of obtaining possession and/or rights, including but not limited to assignment, agreement, transfer and/or purchase.

13.    "Valuation" means, when used in reference to the IL17A/F portfolio, any estimation or assessment of worth, including but not limited to any assessment or estimation as to monetary value, validity, enforceability, scope of the claims, strengths, and/or weaknesses.

14.    "Document" has the broadest meaning accorded that term by Federal Rule of Civil Procedure 34 and includes, but is not limited to, electronic compilations, databases, and all of the items defined in Federal Rules of Evidence 1001, and all preliminary and final drafts of any such items. Any original or copy of a document containing or having attached to it any alterations, notes, comments, or other material not included in the first document shall be deemed a separate document. Any English language translation of a requested document shall be deemed a separate document.

9.    "Person" and "persons" mean any individual in any capacity whatsoever or any entity or organization, including divisions, subsidiaries, departments, and other units therein, and shall include a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

10.    "Individual" means a natural person.

11.    "Communication" means all written, electronic, oral, telephonic, or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, telegrams, advertisements, computer mail, e-mail, and all other documents or things evidencing any verbal or nonverbal interaction between persons and entities.

12.    The use of a verb in any tense shall be construed as including the use of the verb in all other tenses.

13.    The singular final of any word shall be deemed to include the plural, and the plural form of any word shall be deemed to include the singular.

14.    "Or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear as necessary to make the request inclusive rather than exclusive, and neither of these words shall be interpreted to limit the scope of these Requests; "or" means "and/or."

15.    The word "any" means one or more.

16.    The word "including" means including but not limited to.

17.    The terms "relate to", "relating to", and "concerning" and all variations thereof mean: relating to, referring to, pertaining to, regarding, concerning, identifying, containing, reflecting, describing, discussing, evidencing, embodying, constituting or showing, or in any way logically or factually connected with the matter discussed or identified.

18.    The term "made available to" means any form of disclosure via any means, including oral or written.

19.    The term "legal action" means any past, present, or contemplated legal or administrative proceeding before any tribunal.

## INSTRUCTIONS

1.    The documents and things requested below are those that were created, modified, sent, or received at any time.

2.    Electronic records and computerized information must be produced in an intelligible font, together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

4

3.      Selection of documents from files and other sources and the numbering of such documents shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

4.      File folders with tabs or labels or directories of files identifying documents called for by these requests must be produced intact with such documents.

5.      Documents attached to each other shall not be separated.

6.      All responsive documents must be produced, regardless of whether such documents are possessed directly by YOU or are possessed by any of YOUR officers, directors, employees, agents, representatives or attorneys.

7.      If no documents are responsive to a particular request, YOU are to state that no responsive documents exist.

8.      Where an identified document is in a language other than English, state whether or not an English language translation of such documents exists and, if so, identify it.

9.      These requests shall be deemed continuing so as to require further and supplemental production in accordance with the Federal Rules of Civil Procedure.

10.     Should YOU seek to withhold any document based on some limitation of discovery (including a claim of privilege), supply a list of the documents for which limitation of discovery is claimed, indicating:

        a.      the identity of each document's author, writer, sender, or initiator;

        b.      the identity of each document's recipient, addressee, or person for whom it was intended;

        c.      the date of creation or transmittal indicated on each document or an estimate of that date, indicated as such, if no date appears on the document;

d.    a listing of all persons, including addressees, to whom either copies of, or information set forth in, the document or thing have been disclosed, including the date and means of such disclosure;

e.    the general subject matter as described on each document, or, if no such description appears, then another description sufficient to identify the document; and

f.    the nature of the privilege or other rule of law relied upon to withhold the document or thing and the facts supporting YOUR assertion thereof.

11.    If any documents or things requested to be produced herein have been lost, discarded, destroyed, or are not available for production by YOU for any reason whatsoever, identify them as completely as possible, by stating without limitation: the information requested by paragraphs (10) (a)-(f) above, the date of disposal, the manner of disposal, the reason for disposal, any person, firm, or corporation who has possession, custody, or control of a partial or complete copy of such document, and the identity of all persons who participated in the destruction or discarding or who have knowledge of the date and circumstances surrounding the destruction of the document or thing.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Documents and communications of Genentech and between Genentech and third parties regarding Genentech's decision, efforts and attempts to sell, license, transfer, assign or otherwise divest the IL17A/F portfolio to any third party, including but not limited to Lilly and Novartis.

2.    Documents and communications of Genentech and between Genentech and third parties that relate to the alleged validity and enforceability of the IL17A/F portfolio.

3.    Documents and communications between Genentech and Novartis that relate to any opposition to any patent of the IL17A/F portfolio, before any patent office, administrative tribunal or court worldwide, including all existing English translations of such documents and communications, including but not limited to any documents submitted by Novartis that have been made available to Genentech.

4.    Documents and communications relating to Genentech's assignment(s) of the IL17A/F portfolio to Novartis, including but not limited to all documents and communications relating to an "Asset Purchase, License, and Settlement Agreement," allegedly "effective April 23, 2020," as well as all related assignment documents, including a "Patent Assignment" dated May 7, 2020; a "Delayed Patent Assignment," dated May 28, 2020; and individualized territory assignments including "Delayed Patent Assignment," dated June 8, 2020; "Assignment of claims from the German part of European Patent EP 2 784 084" dated May 28, 2020, the assignment of the Italian portion of European Patent EP 2 784 084 to Novartis Pharma AG dated November 13, 2020, the Declaration of Assignment dated December 14, 2020 attached as annex 10 to Novartis' Preliminary Injunction Application filed in Italy in Court of Rome proceedings Docket Number 25087/2021, excerpt from the UIBM database regarding EP 2 784 084 filed as annex 11 to Novartis' Preliminary Injunction Application in Italy in Court of Rome proceedings Docket Number 25087/2021, any assignment of the Irish portion of European Patent EP 2 784 084 to Novartis, and any assignment of the Austrian portion of European Patent EP 2 784 084 to Novartis.

5.    Documents and communications relating to Genentech's assignment of the right to collect back damages for any alleged infringement of the IL17A/F portfolio to Novartis.

6.    Documents sufficient to show the consideration received by Genentech in connection with Novartis' purported acquisition of the IL17A/F portfolio, including any royalties for the use of any invention covered by IL17A/F portfolio.

7.    Documents and communications of Genentech and between Genentech and Novartis that relate to any contemplated or instituted proceedings before any tribunal in any jurisdiction related to the IL17/AF portfolio, including *Genentech v. Lilly,* Fed. Cir. Case No. 2021-1874.

8.    Documents and communications between Genentech and Novartis that relate to any efforts by Novartis to license the IL17A/F portfolio to Lilly following Novartis' purported acquisition of the IL17A/F portfolio.

9.    Executed agreements that relate to any ongoing interest maintained by Genentech, including a financial relationship between Genentech and Novartis, with respect to the IL17A/F portfolio or with respect to any sales of Cosentyx® (*secukinumab*).

10.    Documents sufficient to show Genentech's valuation of the IL17A/F portfolio before as well as on or after the October 7, 2019 institution date of the '654 patent PGRs, including but not limited to the exclusion of ownership of and inclusion of the right to claim priority to the '654 patent.

11.    Documents and communications of Genentech and between Novartis and Genentech concerning legal action against Lilly related to the IL17A/F portfolio, including but not limited to the relative timing between Genentech's withdrawal of its infringement proceedings against Lilly entities in Düsseldorf, Novartis AG's withdrawal of its opposition to the EP '084 patent, and Novartis' commencement of the German Action, as well as Novartis' withdrawal of the German Action, Novartis' commencement of the Italian PI Application,

Novartis' conduct in connection with the Italian Action, Novartis' conduct in connection with the Irish Actions, and Novartis' commencement of the Austrian Action.

# EXHIBIT D

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Northern District of California

| | |
|---|---|
| In re Ex Parte Application of Eli Lilly and Company et al. | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No. |
| | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                                   Laurie Hill

_____
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | Dechert LLP<br>3000 El Camino Real, Five Palo Alto Square, Suite 650<br>Palo Alto, CA 94306-2112 | Date and Time: |
|---|---|---|

The deposition will be recorded by this method:    video, audio, and stenographic recording

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:   The originals (or true and correct copies if originals do not exist) of all documents, electronically stored information and other things in your possession that are responsive to the requests set forth in Schedule A attached hereto.

_____

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

        *CLERK OF COURT*
                                                            OR
        _____        _____
        *Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Eli Lilly and Company, et al.
_____, who issues or requests this subpoena, are:
Jonathan D.J. Loeb, 300 El Camino Real, Five Palo Alto Square, Suite 650, Palo Alto, CA 94306-2112, Tel: (650) 813-4995
Katherine A. Helm, Three Bryant Park, 1095 Avenue of the Americas, New York, New, York 10036-6797, Tel: (212) 698-3559

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
  **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A FOR RULE 45 SUBPOENA TO LAURIE HILL

## DEFINITIONS

1.      "YOU" or "YOUR" means Laurie Hill, and any directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on your behalf, or within your control, and any person through whom or through which you conduct business.

2.      "Genentech" means Genentech, Inc., and its directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on its behalf, or within its control, and any person through whom or through which it conducts business.

3.      "Lilly" means Eli Lilly Italia S.p.A., Eli Lilly Kinsale Limited, Eli Lilly Nederland B.V., Eli Lilly Ges.m.b.H., Lilly Deutschland GmbH, or Eli Lilly & Company, Limited, and its directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on its behalf, or within its control, and any person through whom or through which it conducts business.

4.      "Novartis" means Novartis Pharma AG, Novartis AG, Novartis International AG, Novartis Farma S.p.A, or Novartis Pharmaceuticals Corporation and its directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on its behalf, or within its control, and any person through whom or through which it conducts business.

5.      "German Action" means the litigation between Novartis Pharma AG and Lilly Deutschland GmbH in the Mannheim Regional Court in Germany, Dkt. No. 2O 59/20, as well as any defensive actions instituted in response to the claims that were raised in Dkt. No. 2O 59/20.

1

6.      "Irish Actions" means the litigation between Novartis Pharma AG and Eli Lilly and Company in the High Court of Ireland, Record No. 2021/2 PAP, as well as any actions instituted in response to the claims that were raised in Record No. 2021/2 PAP.

7.      "Italian PI Application" means the litigation between Novartis Pharma AG and Novartis Farma S.p.A. on one side and Eli Lilly Italia S.p.a. on the other side, filed on April 16, 2021 in the Court of Rome, Docket Number 25087/2021, and any resulting appeal.

8.      "Italian Action" means the litigation between Novartis Pharma AG and Novartis Farma S.p.A. on one side, and Eli Lilly Italia S.p.A. on the other side, filed on April 16, 2021 in the Court of Milan (Docket Number 23649/2021).

9.      "Austrian Action" means the litigation between Novartis Pharma AG on one side, and Eli Lilly Ges.m.b.H. and Eli Lilly Netherlands BV the other side, filed on June 1, 2021 in the Court of Vienna, Austria.

10.      "IL17A/F portfolio" means any patents or patent applications originally owned by Genentech that are directed to IL17A/F, including European Patent No. 2,784,084 ("EP '084 patent"), European Patent No. 1,641,822 ("EP '822 patent"), United States Patent No. 10,011,654 ("U.S. '654 patent") and any continuation, continuation-in-part, divisional or other patent application (either U.S. or foreign) claiming benefit to or priority from any of the above patents, including patents of addition, reissue patents, reexamination certificates, supplementary protection certificates, and patent term extensions.

11.      "U.S. '654 patent PGRs" means the Post Grant Review Proceedings, Case Nos. PGR2019-00043 and PGR2019-00044, before the United States Patent and Trademark Office.

12.      "Acquisition" means any means of obtaining possession and/or rights, including but not limited to assignment, agreement, transfer and/or purchase.

13.     "Valuation" means, when used in reference to the IL17A/F portfolio, any estimation or assessment of worth, including but not limited to any assessment or estimation as to monetary value, validity, enforceability, scope of the claims, strengths, and/or weaknesses.

14.     "Document" has the broadest meaning accorded that term by Federal Rule of Civil Procedure 34 and includes, but is not limited to, electronic compilations, databases, and all of the items defined in Federal Rules of Evidence 1001, and all preliminary and final drafts of any such items. Any original or copy of a document containing or having attached to it any alterations, notes, comments, or other material not included in the first document shall be deemed a separate document. Any English language translation of a requested document shall be deemed a separate document.

9.     "Person" and "persons" mean any individual in any capacity whatsoever or any entity or organization, including divisions, subsidiaries, departments, and other units therein, and shall include a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

10.     "Individual" means a natural person.

11.     "Communication" means all written, electronic, oral, telephonic, or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, telegrams, advertisements, computer mail, e-mail, and all other documents or things evidencing any verbal or nonverbal interaction between persons and entities.

12.     The use of a verb in any tense shall be construed as including the use of the verb in all other tenses.

13.     The singular final of any word shall be deemed to include the plural, and the plural form of any word shall be deemed to include the singular.

14.     "Or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear as necessary to make the request inclusive rather than exclusive, and neither of these words shall be interpreted to limit the scope of these Requests; "or" means "and/or."

15.     The word "any" means one or more.

16.     The word "including" means including but not limited to.

17.     The terms "relate to", "relating to", and "concerning" and all variations thereof mean: relating to, referring to, pertaining to, regarding, concerning, identifying, containing, reflecting, describing, discussing, evidencing, embodying, constituting or showing, or in any way logically or factually connected with the matter discussed or identified.

18.     The term "made available to" means any form of disclosure via any means, including oral or written.

19.     The term "legal action" means any past, present, or contemplated legal or administrative proceeding before any tribunal.

## INSTRUCTIONS

1.     The documents and things requested below are those that were created, modified, sent, or received at any time.

2.     Electronic records and computerized information must be produced in an intelligible font, together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

4

3.      Selection of documents from files and other sources and the numbering of such documents shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

4.      File folders with tabs or labels or directories of files identifying documents called for by these requests must be produced intact with such documents.

5.      Documents attached to each other shall not be separated.

6.      All responsive documents must be produced, regardless of whether such documents are possessed directly by YOU or are possessed by any of YOUR officers, directors, employees, agents, representatives or attorneys.

7.      If no documents are responsive to a particular request, YOU are to state that no responsive documents exist.

8.      Where an identified document is in a language other than English, state whether or not an English language translation of such documents exists and, if so, identify it.

9.      These requests shall be deemed continuing so as to require further and supplemental production in accordance with the Federal Rules of Civil Procedure.

10.     Should YOU seek to withhold any document based on some limitation of discovery (including a claim of privilege), supply a list of the documents for which limitation of discovery is claimed, indicating:

a.      the identity of each document's author, writer, sender, or initiator;

b.      the identity of each document's recipient, addressee, or person for whom it was intended;

c.      the date of creation or transmittal indicated on each document or an estimate of that date, indicated as such, if no date appears on the document;

      d.      a listing of all persons, including addressees, to whom either copies of, or information set forth in, the document or thing have been disclosed, including the date and means of such disclosure;

      e.      the general subject matter as described on each document, or, if no such description appears, then another description sufficient to identify the document; and

      f.      the nature of the privilege or other rule of law relied upon to withhold the document or thing and the facts supporting YOUR assertion thereof.

11.      If any documents or things requested to be produced herein have been lost, discarded, destroyed, or are not available for production by YOU for any reason whatsoever, identify them as completely as possible, by stating without limitation: the information requested by paragraphs (10) (a)-(f) above, the date of disposal, the manner of disposal, the reason for disposal, any person, firm, or corporation who has possession, custody, or control of a partial or complete copy of such document, and the identity of all persons who participated in the destruction or discarding or who have knowledge of the date and circumstances surrounding the destruction of the document or thing.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Documents and communications of Genentech and between Genentech and third parties regarding Genentech's decision, efforts and attempts to sell, license, transfer, assign or otherwise divest the IL17A/F portfolio to any third party, including but not limited to Lilly and Novartis.

2.      Documents and communications of Genentech and between Genentech and third parties that relate to the alleged validity and enforceability of the IL17A/F portfolio.

3.      Documents and communications between Genentech and Novartis that relate to any opposition to any patent of the IL17A/F portfolio, before any patent office, administrative tribunal or court worldwide, including all existing English translations of such documents and communications, including but not limited to any documents submitted by Novartis that have been made available to Genentech.

4.      Documents and communications relating to Genentech's assignment(s) of the IL17A/F portfolio to Novartis, including but not limited to all documents and communications relating to an "Asset Purchase, License, and Settlement Agreement," allegedly "effective April 23, 2020," as well as all related assignment documents, including a "Patent Assignment" dated May 7, 2020; a "Delayed Patent Assignment," dated May 28, 2020; and individualized territory assignments including "Delayed Patent Assignment," dated June 8, 2020; "Assignment of claims from the German part of European Patent EP 2 784 084" dated May 28, 2020, the assignment of the Italian portion of European Patent EP 2 784 084 to Novartis Pharma AG dated November 13, 2020, the Declaration of Assignment dated December 14, 2020 attached as annex 10 to Novartis' Preliminary Injunction Application filed in Italy in Court of Rome proceedings  Docket Number 25087/2021, excerpt from the UIBM database regarding EP 2 784 084 filed as annex 11 to Novartis' Preliminary Injunction Application in Italy in Court of Rome proceedings Docket Number 25087/2021, any assignment of the Irish portion of European Patent EP 2 784 084 to Novartis, and any assignment of the Austrian portion of European Patent EP 2 784 084 to Novartis.

5.      Documents and communications relating to Genentech's assignment of the right to collect back damages for any alleged infringement of the IL17A/F portfolio to Novartis.

6.     Documents sufficient to show the consideration received by Genentech in connection with Novartis' purported acquisition of the IL17A/F portfolio, including any royalties for the use of any invention covered by IL17A/F portfolio.

7.     Documents and communications of Genentech and between Genentech and Novartis that relate to any contemplated or instituted proceedings before any tribunal in any jurisdiction related to the IL17/AF portfolio, including *Genentech v. Lilly,* Fed. Cir. Case No. 2021-1874.

8.      Documents and communications between Genentech and Novartis that relate to any efforts by Novartis to license the IL17A/F portfolio to Lilly following Novartis' purported acquisition of the IL17A/F portfolio.

9.     Executed agreements that relate to any ongoing interest maintained by Genentech, including a financial relationship between Genentech and Novartis, with respect to the IL17A/F portfolio or with respect to any sales of Cosentyx® (*secukinumab*).

10.     Documents sufficient to show Genentech's valuation of the IL17A/F portfolio before as well as on or after the October 7, 2019 institution date of the '654 patent PGRs, including but not limited to the exclusion of ownership of and inclusion of the right to claim priority to the '654 patent.

11.     Documents and communications of Genentech and between Novartis and Genentech concerning legal action against Lilly related to the IL17A/F portfolio, including but not limited to the relative timing between Genentech's withdrawal of its infringement proceedings against Lilly entities in Düsseldorf, Novartis AG's withdrawal of its opposition to the EP '084 patent, and Novartis' commencement of the German Action, as well as Novartis' withdrawal of the German Action, Novartis' commencement of the Italian PI Application,

Novartis' conduct in connection with the Italian Action, Novartis' conduct in connection with the Irish Actions, and Novartis' commencement of the Austrian Action.

# EXHIBIT E

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| In re Ex Parte Application of Eli Lilly and Company et al. | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )     Civil Action No. |
| | ) |
| _____ | ) |
| *Defendant* | ) |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:

Genentech, Inc.
1 DNA Way, South San Francisco, California 94080
c/o CSC Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See attached.

| Place: Dechert LLP | Date and Time: |
|---|---|
| 3000 El Camino Real, Five Palo Alto Square, Suite 650 | |
| Palo Alto, CA 94306-2112 | |

The deposition will be recorded by this method:   video, audio, and stenographic recording

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:   The originals (or true and correct copies if originals do not exist) of all documents, electronically stored information and other things Genentech, Inc. was required to provide in response to Applicant's Discovery requests.

      The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Eli Lilly and Company, et al.
_____ , who issues or requests this subpoena, are:

Jonathan D.J. Loeb, 300 El Camino Real, Five Palo Alto Square, Suite 650, Palo Alto, CA 94306-2112, Tel: (650) 813-4995
Katherine A. Helm, Three Bryant Park, 1095 Avenue of the Americas, New York, New, York 10036-6797, Tel: (212) 698-3559

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## <u>SCHEDULE A FOR RULE 45 SUBPOENA TO GENENTECH, INC.</u>

## <u>DEFINITIONS</u>

1.      "YOU," "YOUR" or "Genentech" mean Genentech, Inc., and its directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on its behalf, or within its control, and any person through whom or through which it conducts business.

2.      "Lilly" means Eli Lilly Italia S.p.A., Eli Lilly Kinsale Limited, Eli Lilly Nederland B.V., Eli Lilly Ges.m.b.H., Lilly Deutschland GmbH, or Eli Lilly & Company, Limited, and its directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on its behalf, or within its control, and any person through whom or through which it conducts business.

3.      "Novartis" means Novartis Pharma AG, Novartis AG, Novartis International AG, Novartis Farma S.p.A, or Novartis Pharmaceuticals Corporation and its directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives or persons acting or purporting to act on its behalf, or within its control, and any person through whom or through which it conducts business.

4.      "German Action" means the litigation between Novartis Pharma AG and Lilly Deutschland GmbH in the Mannheim Regional Court in Germany, Dkt. No. 2O 59/20, as well as any defensive actions instituted in response to the claims that were raised in Dkt. No. 2O 59/20.

5.      "Irish Actions" means the litigation between Novartis Pharma AG and Eli Lilly and Company in the High Court of Ireland, Record No. 2021/2 PAP, as well as any actions instituted in response to the claims that were raised in Record No. 2021/2 PAP.

1

6.      "Italian PI Application" means the litigation between Novartis Pharma AG and Novartis Farma S.p.A. on one side and Eli Lilly Italia S.p.a. on the other side, filed on April 16, 2021 in the Court of Rome, Docket Number 25087/2021, and any resulting appeal.

7.      "Italian Action" means the litigation between Novartis Pharma AG and Novartis Farma S.p.A. on one side, and Eli Lilly Italia S.p.A. on the other side, filed on April 16, 2021 in the Court of Milan (Docket Number 23649/2021).

8.      "Austrian Action" means the litigation between Novartis Pharma AG on one side, and Eli Lilly Ges.m.b.H. and Eli Lilly Netherlands BV the other side, filed on June 1, 2021 in the Court of Vienna, Austria.

9.       "IL17A/F portfolio" means any patents or patent applications originally owned by Genentech that are directed to IL17A/F, including European Patent No. 2,784,084 ("EP '084 patent"), European Patent No. 1,641,822 ("EP '822 patent"), United States Patent No. 10,011,654 ("U.S. '654 patent") and any continuation, continuation-in-part, divisional or other patent application (either U.S. or foreign) claiming benefit to or priority from any of the above patents, including patents of addition, reissue patents, reexamination certificates, supplementary protection certificates, and patent term extensions.

10.      "U.S. '654 patent PGRs" means the Post Grant Review Proceedings, Case Nos. PGR2019-00043 and PGR2019-00044, before the United States Patent and Trademark Office.

11.      "Acquisition" means any means of obtaining possession and/or rights, including but not limited to assignment, agreement, transfer and/or purchase.

12.      "Valuation" means, when used in reference to the IL17A/F portfolio, any estimation or assessment of worth, including but not limited to any assessment or estimation as to monetary value, validity, enforceability, scope of the claims, strengths, and/or weaknesses.

13.     "Document" has the broadest meaning accorded that term by Federal Rule of Civil Procedure 34 and includes, but is not limited to, electronic compilations, databases, and all of the items defined in Federal Rules of Evidence 1001, and all preliminary and final drafts of any such items. Any original or copy of a document containing or having attached to it any alterations, notes, comments, or other material not included in the first document shall be deemed a separate document. Any English language translation of a requested document shall be deemed a separate document.

9.     "Person" and "persons" mean any individual in any capacity whatsoever or any entity or organization, including divisions, subsidiaries, departments, and other units therein, and shall include a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

10.     "Individual" means a natural person.

11.     "Communication" means all written, electronic, oral, telephonic, or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, telegrams, advertisements, computer mail, e-mail, and all other documents or things evidencing any verbal or nonverbal interaction between persons and entities.

12.     The use of a verb in any tense shall be construed as including the use of the verb in all other tenses.

13.     The singular final of any word shall be deemed to include the plural, and the plural form of any word shall be deemed to include the singular.

14.    "Or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear as necessary to make the request inclusive rather than exclusive, and neither of these words shall be interpreted to limit the scope of these Requests; "or" means "and/or."

15.    The word "any" means one or more.

16.    The word "including" means including but not limited to.

17.    The terms "relate to", "relating to", and "concerning" and all variations thereof mean: relating to, referring to, pertaining to, regarding, concerning, identifying, containing, reflecting, describing, discussing, evidencing, embodying, constituting or showing, or in any way logically or factually connected with the matter discussed or identified.

18.    The term "made available to" means any form of disclosure via any means, including oral or written.

19.    The term "legal action" means any past, present, or contemplated legal or administrative proceeding before any tribunal.

## INSTRUCTIONS

As provided in Rule 30(b)(6) of the Federal Rules of Civil Procedure, Genentech shall designate a knowledgeable corporate witness who is prepared to speak to the enumerated Deposition Topics set forth below.

## DEPOSITION TOPICS

1.    Communications of Genentech and between Genentech and third parties regarding Genentech's decision, efforts and attempts to sell, license, transfer, assign or otherwise divest the IL17A/F portfolio to any third party, including but not limited to Lilly and Novartis.

2.      Communications of Genentech and between Genentech and third parties that relate to the alleged validity and enforceability of the IL17A/F portfolio.

3.      Communications between Genentech and Novartis that relate to any opposition to any patent of the IL17A/F portfolio, before any patent office, administrative tribunal or court worldwide, including all existing English translations of such documents and communications, including but not limited to any documents submitted by Novartis that have been made available to Genentech.

4.      Genentech's assignment(s) of the IL17A/F portfolio to Novartis, including but not limited to all documents and communications relating to an "Asset Purchase, License, and Settlement Agreement," allegedly "effective April 23, 2020," as well as all related assignment documents, including a "Patent Assignment" dated May 7, 2020; a "Delayed Patent Assignment," dated May 28, 2020; and individualized territory assignments including "Delayed Patent Assignment," dated June 8, 2020; "Assignment of claims from the German part of European Patent EP 2 784 084" dated May 28, 2020, the assignment of the Italian portion of European Patent EP 2 784 084 to Novartis Pharma AG dated November 13, 2020, the Declaration of Assignment dated December 14, 2020 attached as annex 10 to Novartis' Preliminary Injunction Application filed in Italy in Court of Rome proceedings  Docket Number 25087/2021, excerpt from the UIBM database regarding EP 2 784 084 filed as annex 11 to Novartis' Preliminary Injunction Application in Italy in Court of Rome proceedings Docket Number 25087/2021, any assignment of the Irish portion of European Patent EP 2 784 084 to Novartis, and any assignment of the Austrian portion of European Patent EP 2 784 084 to Novartis.

5.      Genentech's assignment of the right to collect back damages for any alleged infringement of the IL17A/F portfolio to Novartis.

6.      The consideration received by Genentech in connection with Novartis' purported acquisition of the IL17A/F portfolio, including any royalties for the use of any invention covered by IL17A/F portfolio.

7.      Communications of Genentech and between Genentech and Novartis that relate to any contemplated or instituted proceedings before any tribunal in any jurisdiction related to the IL17/AF portfolio, including *Genentech v. Lilly,* Fed. Cir. Case No. 2021-1874.

8.      Communications between Genentech and Novartis that relate to any efforts by Novartis to license the IL17A/F portfolio to Lilly following Novartis' purported acquisition of the IL17A/F portfolio.

9.      Executed agreements that relate to any ongoing interest maintained by Genentech, including a financial relationship between Genentech and Novartis, with respect to the IL17A/F portfolio or with respect to any sales of Cosentyx® (*secukinumab*).

10.      Genentech's valuation of the IL17A/F portfolio before as well as on or after the October 7, 2019 institution date of the '654 patent PGRs, including but not limited to the exclusion of ownership of and inclusion of the right to claim to priority to the '654 patent.

11.      Communications of Genentech and between Novartis and Genentech concerning legal action against Lilly related to the IL17A/F portfolio, including but not limited to the relative timing between Genentech's withdrawal of its infringement proceedings against Lilly entities in Düsseldorf, Novartis AG's withdrawal of its opposition to the EP '084 patent, and Novartis' commencement of the German Action, as well as Novartis' withdrawal of the German Action, Novartis' commencement of the Italian PI Application, Novartis' conduct in connection

with the Italian Action, Novartis' conduct in connection with the Irish Actions, and Novartis'
commencement of the Austrian Action.